VINCENT VAN RENSSELAER, PLAINTIFF-RESPONDENT, v. BETTY VIORST, DEFENDANT, AND LOUIS VIORST, DEFENDANT-APPELLANT.

Argued October 23, 1947—Decided January 29, 1948.

For the appellant, *John C. Grimshaw* (*David E. Feldman,* of counsel).

For the respondent, *Winne & Banta* (*George Winne,* of counsel).

The opinion of the court was delivered by

HEHER, J. Late in the afternoon of August 21st, 1946, plaintiff was struck by an automobile operated by appellant Louis Viorst, while crossing State Highway Route No. 4 on foot, between Hartley Street and Grunauer Place, in Fair Lawn, and suffered injuries for which he seeks compensation in this action in tort for negligence. There was a directed verdict in favor of defendant Betty Viorst, the owner of the vehicle, for failure of proof of agency in its operation; and the jury awarded damages to plaintiff against Louis, who has taken this appeal.

It is assigned for error that the trial judge denied appellant's motions to nonsuit and direct a verdict in his favor

because (a) there was no evidence of negligence on his part, and (b) the proofs established that plaintiff was negligent as a matter of law. We find no error in these rulings.

The refusal of a nonsuit for failure of proof of negligence is not reversible error if such evidence be later supplied by either party during the course of the trial, and we shall therefore consider these questions as one. *Layden* v. *Goodyear Tire and Rubber Co., Inc.,* 129 *N. J. L.* 54; *LeBavin* v. *Suburban Gas Co.,* 134 *Id.* 10.

Route No. 4, known as Broadway at the point where the mishap occurred, is a six-lane highway, 83½ feet wide. Proceeding in a southerly direction across the highway, some distance from the nearest crosswalk to the east, plaintiff was close to the center line when he was struck by the automobile, moving in a westerly direction in the third lane. There was considerable traffic at the time; but plaintiff testified that when he began the crossing, the nearest vehicle on the westbound lanes was 200 feet away. This car passed him. He moved along; and when he reached a point about 10 feet from the center line of the highway, he observed the approach of defendant's vehicle, then 30 or 40 feet away. He "continued on to get to the white line, to the center;" and he had taken three or four steps when the collision occurred. He said: "There was no traffic behind him (referring to appellant). There was nobody else there, and I was under the impression that he would go in back of me; I was so close to the line." A witness testified that plaintiff was five to seven feet from the center line of the highway when he was struck, and that the left wheels of the vehicle were "about on the center line." There was evidence that the speed of the automobile was about 30 miles per hour. Tire skid marks on the road surface indicated that the vehicle had proceeded a distance of 38 feet after the application of the brakes before it was brought to a stop. Defendant testified that his car was in the third traffic lane, moving at a speed of 25 or 30 miles per hour, just before the collision occurred; and there was "very heavy traffic" in both directions. He continued: "As I approached I saw Mr. Van Rensselaer, and all of a sudden another car comes out from my right-hand side; I

don't know just where he came from; but he almost hit Mr. Van Rensselaer in the back; and he turned around and he saw the car, and he couldn't—he avoided hitting him, and he jumped right into my car. I didn't hit Mr. Van Rensselaer at all. He just jumped into my car. I applied my brakes, and I couldn't go either way, because if I had gone to my left I definitely would have been hit by another car, so I applied my brakes and just went straight ahead." He applied his brakes, he admitted on cross-examination, just as his car struck plaintiff. He conceded plaintiff was thrown some distance upward. Later on, on redirect examination, he said plaintiff was some 25 or 30 feet away when he "stepped in front" of the automobile to avoid the other vehicle, which, he said, had been pursuing an erratic course, moving from one lane to another. When again cross-examined, he denied he said plaintiff had "jumped in front" of his car; he insisted he had said that plaintiff had "jumped into the side" of his car.

Thus, there was a sharp divergence in the evidence as to matters vitally affecting the issues of negligence and contributory negligence; and the ascertainment of the facts was therefore within the exclusive province of the jury. If the circumstances were as related by the plaintiff, men of ordinary prudence might well differ as to whether defendant had exercised reasonable care, and it was for the jury to determine whether negligence ought to be inferred; and this was likewise true of the conduct of plaintiff. The defendant, himself, suggests that the collision would have been avoidable if it had not been for the interference of traffic proceeding in the same direction, particularly the vehicle that was then moving from one lane to another; while plaintiff testified that there was no obstructing traffic whatever. And negligence is fairly inferable from defendant's own testimony as to the time when the brakes were applied. The ultimate question was whether, under all the circumstances, defendant exercised reasonable care for plaintiff's safety, and if not, whether plaintiff himself exercised reasonable care for his own safety; and these were pre-eminently questions for the jury, as is usually the case with highway collisions of this class.

Plaintiff had a right to presume that vehicles on the highway would be operated with due regard for his safety. It is not *per se* negligence for a pedestrian to cross a highway at a point not a cross-walk; but in doing so he is bound to use reasonable care for his own safety. The duty of reasonable care by highway users is mutual, and each may assume that the others will observe that standard of conduct in the use of the highway. *LeBavin* v. *Suburban Gas Co., supra; Shappell* v. *Apex Express, Inc.,* 131 *N. J. L.* 583; *Neidig* v. *Fisher,* 123 *Id.* 242; *Wassmer* v. *Public Service Electric and Gas Co.,* 122 *Id.* 367; *Rochford* v. *Slankewicz,* 108 *Id.* 265; *Newham* v. *Nazzara,* 107 *Id.* 208; *Fox* v. *Great Atlantic and Pacific Tea Co.,* 84 *Id.* 726.

Next, it is urged that there was error in the refusal of the judge to strike out evidence of a coronary occlusion suffered by plaintiff while he was undergoing hospitalization following the collision. It is said that this evidence is "speculative" and "fails to eliminate the other causes for the heart condition," and so there was a failure of proof of a causal connection between "the injury and the heart condition." The case of *Migliaccio* v. *Public Service Railway Co.,* 101 *N. J. L.* 496; *affirmed,* 102 *Id.* 442, is cited. But it is not in point.

While the physicians first found evidence of the coronary occlusion 22 days after the collision, plaintiff testified that he experienced heart pains eight or nine days after the mishap. His injuries were quite severe. He suffered a fracture of the lower left leg, an injury to his right shoulder which at the time gave indications of a fracture, and a deep laceration over the left eye; and he "definitely was in shock and had bled quite a bit." He was 64 years of age. Dr. Johnson, his attending physician at the hospital, testified that, "so far as physically possible," as respects the heart condition, he had "made a definite elimination of all other causes than the injuries" plaintiff had sustained. Considering this testimony in the light of all the circumstances, the question of causal connection was plainly one for the jury.

We find no error in the judge's refusal to charge defendant's sixth request, absolving him from "any duty * * * to

guard against sudden, unforeseen and unanticipated acts of another."

Plaintiff suggests that defendant's own testimony was such as to exclude the factual circumstances on which the request is founded. As we have seen, defendant's testimony on this point was contradictory; but we find no error in the ruling, for the charge, considered as a whole, made clear to the jury the law covering the subject-matter of the request.

Judgment affirmed.

OLIPHANT, CHANCELLOR. (Dissenting.) My dissent from the majority opinion is based solely on the refusal of the trial court to strike out and take from the jury, as an element of damages, the heart condition of the plaintiff. He suffered a coronary occlusion a month after the accident while confined in the hospital. The record is entirely devoid of testimony showing any probable causal connection between the accident and the heart attack. Under these circumstances to have refused to take from the jury that phase of the case was harmful and prejudicial error.

*For affirmance*—BODINE, DONGES, HEHER, WACHENFELD, WELLS, DILL, FREUND, McLEAN, SCHETTINO, JJ. 9.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, COLIE, EASTWOOD, BURLING, JJ. 5.