63 N.J. Super. 215 (1960)
164 A.2d 503
HARRIET SHARP, ET AL., PLAINTIFFS-APPELLANTS,
v.
FRANCIS CRESSON, JOSEPH (OR JOHN) A. MUCCI, AND PUBLIC SERVICE COORDINATED TRANSPORT, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 19, 1960.
Decided October 7, 1960.
*218 Before Judges GOLDMANN, FREUND and KILKENNY.
Mr. Charles A. Cohen argued the cause for plaintiffs-appellants (Mr. Joseph R. Moss, attorney; Mr. Charles A. Cohen, on the brief).
Mr. Louis F. Stein, Jr., argued the cause for defendants-respondents, Joseph A. Mucci and Public Service Coordinated Transport (Mr. Stephen J. Foley, on the brief).
Mr. Roy D. Cummins argued the cause for defendant-respondent Francis Cresson (Mr. Samuel P. Orlando, attorney).
The opinion of the court was delivered by FREUND, J.A.D.
This is a negligence action arising out of a collision between an automobile, owned and operated by defendant Francis Cresson, and a bus owned by defendant Public Service Coordinated Transport and operated by Joseph Mucci. The plaintiffs consist of four women who were passengers in the Cresson automobile, and the husbands of two of the women also sue per quod. After a jury trial in the Law Division, Camden County, the jury rendered verdicts totaling $42,000 in favor of the plaintiffs and against the defendant Cresson. The jury found no cause of action against the defendants Public Service and Mucci. The latter judgment forms the basis for the present appeal, and reversible error is claimed in certain portions of the trial judge's charge to the jury and the denial of a new trial.
The facts as gathered from the testimony are as follows: On January 14, 1958 at about 6:25 A.M., the defendant Cresson, accompanied by the plaintiff women, was driving his automobile in a drizzling rain in a northerly direction *219 along the Black Horse Pike, a three-lane concrete highway, north of Clementon Avenue, at Blenheim, N.J. The collision occurred when the bus, which was preceding the Cresson vehicle, pulled off the most easterly concrete lane and partially onto a black-top shoulder abutting the concrete highway, and either stopped or slowed down to pick up a passenger. Cresson drove his automobile into the rear of the bus. There was testimony that the rear of the bus was projecting into the most easterly concrete lane from one to six feet.
It was alleged by the plaintiffs that the negligence on the part of Public Service and its operator Mucci consisted of failing to display proper warning lights on the rear of the bus, suddenly stopping the vehicle on the highway without warning, and failing to pull the bus completely onto the shoulder before coming to a stop.
Plaintiffs contend that the trial judge committed reversible error in instructing the jury that the operator of the bus was under no duty under the law of this State to drive the bus off the concrete pavement and onto the shoulder of the highway for the purpose of taking on a passenger, and in refusing to charge the jury as to sections of the traffic act, which read as follows:

"39:4-65 Letting off or taking on persons
No operator of a vehicle shall stop the vehicle on the highway for the purpose of letting off or taking on a person, other than at the curb or side of the road or highway, or knowingly permit a person to alight from or enter upon the vehicle while it is in motion."

"39:4-67 Obstructing passage of other vehicles or street cars prohibited; clearance of intersections
No vehicle or street car shall be permitted by the owner or driver thereof to so occcupy a street as to interfere with or interrupt the passage of other street cars or vehicles, nor shall the driver of a vehicle or street car drive such vehicle or street car into an intersection if preceding traffic prevents immediate clearance of the intersection."
They claim that had the instructions included the foregoing sections, the jury could have found that the defendant bus *220 company violated these provisions, and therefore could have inferred negligence from such violation.
The plaintiffs urge that we overrule the holding in Hochberger v. G.R. Wood, 124 N.J.L. 518 (E. & A. 1940), where the court construed R.S. 39:4-65 as not requiring a vehicle to leave the concrete roadway and proceed onto the shoulder for the purpose of discharging a passenger. In Hochberger, a passenger was discharged from a bus on a 20-foot highway onto an 8-foot gravel shoulder. The bus stopped with its right front wheel from six inches to a foot off the concrete roadway on the gravel shoulder. As the plaintiff alighted from the bus, he was injured by a car traveling from the rear along the shoulder. The court, in referring to R.S. 39:4-65, stated, 124 N.J.L., at p. 520:
"We do not construe this as to require a vehicle to leave the concrete and cross over the shoulder. The shoulder is not designed nor constructed for general traffic uses but is rather for emergency uses such as parking of vehicles disabled or otherwise."
See Annotation, 131 A.L.R. 562, 579 (1941).
Plaintiffs contend that the Hochberger case is archaic, in view of the sturdy condition of modern shoulders. No proofs are offered in support of this assertion, and we do not consider this a proper instance to take judicial notice of the physical condition of shoulders. Moreover, it is apparent that the Legislature, as late as 1956, when the statutory definitions were last amended, still believed that shoulders should be used only for emergency purposes. The Legislature has defined a shoulder to be "that portion of the highway exclusive of and bordering the roadway designed for emergency use, but not ordinarily to be used for vehicular traffic." "Roadway" is characterized as that portion of the highway ordinarily used for vehicular traffic. N.J.S.A. 39:1-1. Moreover, the Legislature, by R.S. 39:4-85, amended by Chapter 23 of the Laws of 1951, has expressly prohibited "driving off the pavement or main-traveled portion of the highway."
*221 It is clear that the Legislature did not intend that the shoulder of a road be used for ordinary travel. Furthermore, the highway in question had three lanes, and although the testimony varies as to the distance that the rear of the bus extended onto the right lane, the proofs fail to show that the Cresson vehicle could not have safely passed the bus in the center lane. See N.J.S.A. 39:4-85.
In adopting R.S. 39:4-65, it was evidently the intention of the Legislature to protect persons, entering or leaving a vehicle, from the dangers of other vehicular traffic on the highway. Plaintiffs agree that this is so, but allege that this statutory section was also intended to ensure the safety of other users of the highway by prohibiting the hazardous stopping of vehicles. If this had been the legislative intent, the lawmakers would not have limited R.S. 39:4-65 to stops solely for the purpose of discharging and receiving passengers. The Legislature could have enacted a provision similar to section 11-1001 of the Uniform Vehicle Code (1954 and 1956 rev.) which reads as follows:

"Stopping, standing or parking outside of business or residence districts.
(a) Upon any highway outside of a business or residence district no person shall stop, park or leave standing any vehicle, whether attended or unattended, upon the paved or main-traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in any event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles. * * *"
The Legislature did enact a substantially similar provision in R.S. 39:4-136, further amended by Chapter 23 of the Laws of 1951. Significantly, this provision omits the word "stop" and refers only to the parking and standing of vehicles. A further indication of the importance of this omission may be had from the legislative definition of "parking," N.J.S.A. 39:1-1:
"`Parking' means the standing or waiting on a street, road or highway of a vehicle not actually engaged in receiving or discharging *222 passengers or merchandise, unless in obedience to traffic regulations or traffic signs or signals." (Emphasis added)
Thus, it is manifest that the Legislature did not take affirmative action to encourage the stopping of vehicles off the roadway in non-business and non-residential areas. The reason is undoubtedly suggested by what was said by the court in the Hochberger case  i.e., that the shoulder is designed for emergency use only and, moreover, that if heavy vehicles were required to leave the roadway and move to the extreme edge of the shoulder in order to receive and discharge passengers, the shoulders would probably be incapable of such use.
Plaintiffs further contend that there was error in failing to instruct the jury as to the provisions of N.J.S.A. 39:4-67. The apparent purpose of this statute is to eliminate or avoid traffic congestion by prohibiting the obstruction of passage of other vehicles. Where a road, as here, consists of three lanes, the stopping of a bus to pick up a passenger at the shoulder of the road does not obstruct traffic within the meaning of the statute. The traffic should properly wait until the bus picks up its passenger and proceeds on its route, or it should pass the bus on the left. See N.J.S.A. 39:4-85; 11 Uniform Laws Annotated, § 29a, p. 32 (1938).
Our construction of the legislative purpose of N.J.S.A. 39:4-67 is reinforced by reference to R.S. 39:4-65. That statute, as noted, requires that a bus pull up to the curb to discharge or accept passengers, whenever there is a curb. It cannot be said that N.J.S.A. 39:4-67 should be construed or considered to conflict with R.S. 39:4-65, so that a bus which stops at a curb is held to occupy the street so as to interfere with or interrupt the passage of other vehicles. We are of the opinion that there was no error in refusing to instruct the jury as to R.S. 39:4-65 and N.J.S.A. 39:4-67.
The part of the charge complained of reads as follows:
"Under the law of this State as applied to the circumstances of this case, the driver of the bus was under no duty to leave the *223 concrete portion of the highway or to proceed upon the shoulder of the highway for the purpose of accepting passengers."
Plaintiffs contend that the disputed instruction had the effect of taking from the jury the entire issue of whether, under the circumstances, the bus driver was negligent in not driving the bus entirely off the concrete portion of the highway. This contention is based upon the judge's use of the phrase "under the law of this State." It is claimed that the jury must have understood the instruction to mean that under both the common law and the statutory law, no duty was imposed upon the bus driver to withdraw from the concrete lanes of the highway. Further, it is claimed that the instruction not only prevented the jury from drawing an inference of negligence from the violation of R.S. 39:4-65 and N.J.S.A. 39:4-67, but prevented the jury from lawfully considering whether the bus driver's action and conduct in this respect were negligent irrespective of the inferences to be drawn from a violation of the statutes.
The court in the charge to the jury exhaustively considered both common law negligence and provisions of the Motor Vehicle Act. The jury was instructed on the legal relationship of the parties; the duties owed by reason of their respective positions and the degree of care of travelers using the highway. The judge, throughout portions of the charge, frequently stated that the jury should determine whether either or both of these drivers did or failed to do anything in the operation and control of their respective vehicles that would bring their conduct within the definition of negligence given by the judge, i.e., whether either one or both of these defendants did or failed to do anything in the operation and control of their respective vehicles that a reasonable person would not have done.
The jury was instructed that the laws of New Jersey contain certain provisions with reference to the operation of motor vehicles, and the judge quoted at length from N.J.S.A. 39:3-61, dealing with lights on motor vehicles. Then followed the disputed instruction. Immediately afterwards *224 the judge quoted from N.J.S.A. 39:4-126, relating to signaling while operating a motor vehicle, and continued with several other sections of the Motor Vehicle Law. Then followed the instruction that the mere violation of a traffic rule does not constitute negligence per se but may serve as evidence of negligence. Then the judge gave the following instruction:
"So, while you must give weight and consider all of the testimony in this case, and its reference to any traffic rules that may have existed, you must also bear in mind that the ultimate test of negligence is whether or not reasonable care was exercised under all the circumstances of the case whether a traffic rule was violated or not; because if it should transpire that you should find these defendants or any of them, exercised reasonable care on this occasion you would not have to go any further with respect to such defendants or defendant, as the case may be."
The purpose of analyzing the instruction is to show that the disputed portion of the charge could not have misled the jury, because the judge at that point was discussing only traffic regulations. When we consider the common law aspect of the charge, it is clear that the judge gave such a comprehensive charge that the jury could not reasonably have been confused. The jury knew what was meant by "reasonable care under all the circumstances," and was clearly aware of the fact that defendants might have been negligent in the operation of their bus even in the absence of any violation of the statutory law.
We have frequently held that in searching the court's charge for reversible error, the instruction must be examined as a whole, with disputed portions read in context. Ristan v. Frantzen, 14 N.J. 455, 461 (1954); Palumbo v. Collito, 42 N.J. Super. 436, 452 (App. Div. 1956), certification denied 23 N.J. 139 (1957). Considering the charge before us in accordance with this principle, we cannot say that the jury was in any way misled.
It is also observed that while a bus company is under a common law duty to provide a reasonably safe place for *225 its passengers to alight and to board, Weidenmueller v. Public Service &c, Trans. Co., 129 N.J.L. 279, 282 (Sup. Ct. 1942), and while such a duty might under some circumstances require that the bus be driven onto the shoulder to receive or discharge passengers, the obligation generally runs only to passengers and not to occupants of following vehicles.
With respect to other users of the highway, the operator of a bus  like any other operator of a motor vehicle  is under a duty of reasonable care under the circumstances. Van Rensselaer v. Viorst, 136 N.J.L. 628, 631 (E. & A. 1948). Under certain circumstances, a common carrier might be charged with violation of this duty in its failure to drive onto the shoulder in order to accept or discharge passengers. See Apgar v. Hoffman Construction Co., 124 N.J.L. 86 (E. & A. 1940). However, we do not find such circumstances to exist here.
Affirmed.