Smith, Appellant, *v.* United News Company.

Argued November 18, 1963. Before BELL, C. J., MUSMANNO, JONES, COHEN, O'BRIEN and ROBERTS, JJ.

244

[redacted]

*Michael Shekmar,* for appellant.

*William J. McKinley, Jr.,* with him *Swartz, Campbell & Henry,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, January 7, 1964:

Ronald Smith and his passenger, Helen Parisi, filed suit in trespass against United News Company as a consequence of a collision at the intersection of Castor and Aramingo Avenues in Philadelphia on July 3, 1956. Upon severance, Smith was joined as an additional defendant by United News Company in the action of Miss Parisi. The matter was tried in the Court of Common Pleas of Philadelphia County, and a jury returned a verdict of $5,000 for Ronald Smith and $3,000 for Helen Parisi against United News Company and a verdict for Ronald Smith as additional defendant. United News Company filed motions for judgment n.o.v. and for a new trial in the Smith action, but did not question the verdict in favor of Miss Parisi. The motion for judgment n.o.v. was granted, and this appeal followed.

It is well settled that we must view the entire record and all reasonable inferences therein contained in the light most favorable to the verdict winner, here appellant. The night of July 3, 1956, was clear. At approximately midnight, as Ronald Smith was driving his car eastward on Castor Avenue, he came up behind a tractor-trailer near the intersection of Castor and Frankford Avenues and maintained a distance of four car lengths behind the trailer. At a point between Frankford and Aramingo, both of which intersect Castor, the driver of the trailer signaled for a right turn and moved his vehicle to the far right of the roadway.

Smith then signaled that he intended to pass the trailer.

Appellant was approximately 150 feet west of the intersection with Aramingo Avenue when he commenced to pass the trailer. As he passed, he observed the traffic lights at the intersection with Aramingo to be green in his favor, and he further observed traffic stopped and backed up on Aramingo for the red light which then controlled the traffic moving north and south on that street. Smith was approximately 35 feet west of Aramingo when he completed his pass of the trailer.

The northbound traffic on Aramingo, to appellant's right, consisted of three lanes of cars which had stopped for the red light. The southbound traffic to his left consisted of a dark colored vehicle stopped for the light in the lane closest to appellant. Smith testified that as he approached the intersection and observed the dark car in the closest southbound lane, he had a view of 35 feet north on Aramingo. Although this was an angle view because of a building located on the corner, the building did not obstruct his view of Aramingo Avenue to the north. Appellant's automobile was approximately 25 feet west of the intersection when he made this observation. Appellant stated that he saw nothing to his left other than the car stopped in the lane closest to him.

As appellant neared the curb line of Aramingo Avenue, his line of vision improved so that he could see a further distance to his left, but not much more than 45 feet because of the darkness. Appellant was asked: "Q. Will you tell us in what manner you continued to observe the traffic control?" He replied: "A. I was driving in the eastbound lane of Castor Avenue, and I could see that traffic was stopped, and I could also see that the traffic light was green for me, and I observed traffic and I was watching pedestrians, and one

thing and another, and it was perfectly normal procedure to just enter the intersection in a manner with my automobile under control, and I had no other thoughts."

Appellant had passed the trailer at 25 miles per hour and was at that speed when he reached the intersection. He testified that when he was in the middle of the "southbound lane" of Aramingo Avenue (there are, in fact, three southbound lanes), he "had a vision of two glaring headlights," which was followed by the collision. He could remember nothing of what occurred after the impact. Smith later testified he was halfway across Aramingo (approximately 60 feet wide) at the time of the collision.

Appellee's tractor-trailer was struck by the front of appellant's vehicle and was damaged on its right side undercarriage near the spare tire rack at a point just to the rear of the front wheels of the trailer portion of the rig. Appellant's car was demolished. After the collision, there was debris and glass over the entire southwest portion of the intersection.

The jury apparently rejected the testimony of the driver of appellee's tractor who stated that he was traveling south on Aramingo at 30 miles per hour in the same lane that appellant had observed the dark colored car stopped for the light. On the basis of appellant's and other testimony, the jury determined that the driver of appellee's tractor-trailer had run the red light for which other traffic had stopped. The jury also concluded that appellant was not contributorily negligent.

The court below granted appellee's motion for judgment n.o.v. on authority of this Court's ruling in *Perpetua v. Philadelphia Transportation Co.*, 380 Pa. 561, 112 A. 2d 337 (1955), and observed: "He [Smith] testified in both direct and cross-examination that he never saw defendant's tractor-trailer until the colli-

sion. One fact is absolutely clear, if he had looked he would have seen or should have seen the vehicle approaching southwardly on Aramingo Avenue, a six-lane divided highway."

In determining this issue, we are mindful that a finding of contributory negligence as a matter of law must be supported by a record that inescapably leads to that conclusion; otherwise, the question is one for determination by the jury. *Topelski v. Universal South Side Autos, Inc.,* 407 Pa. 339, 180 A. 2d 414 (1962); *Enfield v. Stout,* 400 Pa. 6, 161 A. 2d 22 (1960).

In *Koehler v. Schwartz,* 382 Pa. 352, 355, 115 A. 2d 155, 156 (1955), this Court observed: "The plaintiff had no way of anticipating that the driver of the trailer-truck would not only defy a control signal but that he would deflect his course. It is true that a motorist with a green light in his favor is not authorized to proceed into a highway crossing if a car is there before him, no matter how negligently he got there. But this does not mean that before he may proceed into an empty intersection he must speculate on what another motorist may do *when there is no indication that the other motorist intends to disobey the law of the road."* (Emphasis supplied.)

The *Koehler* decision necessarily implies that a motorist who has the green light must observe the conditions at the intersection *at the time he enters it* to be reasonably assured that his journey will be safe. But his duty to observe conditions continues, and the failure to do so is fatal to recovery if, as we concluded in *Perpetua,* supra (at 563, 112 A. 2d at 338), "The record is barren of any testimony as to whether he continued to look as he proceeded *through the intersection."* (Emphasis supplied.)

This Court said in *Lewis v. Quinn,* 376 Pa. 109, 112-13, 101 A. 2d 382, 383-84 (1954): "In Byrne v. Schultz, 306 Pa. [427, 160 Atl. 125 (1932)], supra, the Court

said (pages 431, 432, 433) : '. . . our cases have clearly established the fundamental proposition that due care is required at street intersections under all circumstances, whether or not a traffic officer or signal is present. . . . The signal to cross is not a "command to go, but a qualified permission," and the qualification is "to proceed lawfully and carefully," as a prudent man would under the circumstances, which *certainly requires looking to the right and left before entering upon the intersecting street.* To hold otherwise . . . would be to relieve drivers from vigilance and careful driving at street intersections, and license them to drive blindly where traffic is most dangerous. . . .' " (Italics from *Lewis* v. *Quinn.*)

Recently, in *Topelski v. Universal South Side Autos, Inc.*, supra, we held that a plaintiff could not be deemed contributorily negligent as a matter of law in the presence of positive testimony that despite the existence of a green light in his favor, he looked both ways at the time he entered the intersection and had no basis to believe any car would run a red light.

We reiterate that a driver who has a green light is not held to the same standard of care as the driver at an uncontrolled intersection, but he cannot place blind reliance upon the light or upon the conditions observed prior to his entering the intersection.

The decisions of the Superior Court are in accord. In *Jordan v. Kennedy,* 180 Pa. Superior Ct. 593, 597, 119 A. 2d 679, 681 (1956), the court said: "Although one approaching a street intersection must always be vigilant, he cannot be held to the same high degree of care at an intersection with a traffic light giving him the right of way as at an intersection where there is nothing to regulate the right of way. He need not approach an intersection with a green traffic light quite so slowly, nor look so continuously for approaching traffic, first because he has a right to assume traffic

on the intersecting street will stop for the red light and secondly because he must divide his attention between approaching traffic and the light." Accord, *Escher v. Pittsburgh Railways Co.,* 194 Pa. Superior Ct. 66, 166 A. 2d 537 (1960). The import of the *Jordan* and *Escher* decisions is that a driver who is favored by the light must look in the first instance to assure himself that the intersection is safe from oncoming traffic, although, of course, he is not bound to look in all directions simultaneously. *Koehler v. Schwartz,* supra; *Goldenberg v. Watkins,* 191 Pa. Superior Ct. 5, 155 A. 2d 478 (1959).

A careful review of the testimony indicates that appellant did not view the intersection when he arrived at the curb line but only prior thereto *as he approached* the curb line of Aramingo Avenue. *He relied on the light and on what he observed before being in a proper position to view the entire intersection.* There was no obstruction of appellant's view at the curb line, and despite the fact that it was night, appellant had no difficulty seeing the lights from appellee's truck immediately before the collision. Accordingly, we must conclude, as did the court below, that had appellant made any observation at all when he arrived at the curb line, he was bound to see the lights from the truck at that time and that he could have or should have attempted to avoid the collision.

The rule is: " 'a man will not be heard to say he has looked, where if he had looked, he must have seen what was plainly visible.' " See *Zanko v. Semmel,* 379 Pa. 242, 108 A. 2d 700 (1954). His failure to observe under the circumstances makes him contributorily negligent as a matter of law.

Judgment affirmed.

———

Dissenting Opinion by Mr. Justice Musmanno:

I would reverse on the authority of *Koehler v. Schwartz,* 382 Pa. 352.