Gerisch, Appellant, *v.* McElhone.

80

Argued September 16, 1966.   Before ERVIN, P. J.,
WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN,
and SPAULDING, JJ.

*Alexander A. DiSanti,* with him *Richard, Brian &
DiSanti,* for appellant.

*Ernest L. Green, Jr.,* with him *Butler, Beatty, Greer
& Johnson,* for appellee.

OPINION BY MONTGOMERY, J., November 17, 1966:
This appeal arises from an action of trespass for
damages resulting from a collision between two auto-
mobiles in a parking lot of a large shopping center.
The jury returned a verdict for the plaintiff-appellant
but the lower court entered judgment n.o.v. for the de-
fendant-appellee because of plaintiff's contributory neg-
ligence.   On review in such cases the testimony must
be read in the light most advantageous to plaintiff, all
conflicts therein being resolved in his favor, and he
must be given the benefit of every fact, and inference
of fact, pertinent to the issues involved which may rea-
sonably be deduced from the evidence.   *Moyer v. Pitts-
burgh, Mars & Butler Railway,* 275 Pa. 363, 119 A. 469

(1923). Furthermore, it is only in a clear case where the evidence is such that reasonably minded men can unite in the conclusion that a victim of an accident was negligent that a court is justified in declaring him negligent as a matter of law. *Armstrong v. Reading Street Railway Company,* 171 Pa. Superior Ct. 65, 90 A. 2d 277 (1952).

The evidence in this case is limited to that offered by the plaintiff, the defendant not testifying or offering any evidence. Following the principles previously enumerated the facts are as follows.

On April 3, 1964, at 4:00 p.m., plaintiff Ralph A. Gerisch was operating a 1963 Dodge Sedan automobile in a westerly direction on the Lawrence Park Shopping Center parking area. The weather conditions were poor. The sky was overcast and it was raining at the time. At the same time defendant Joseph L. McElhone was operating his stepfather's 1964 Chevrolet automobile in an easterly direction in the same parking area. Leading into the parking area from Parkway (a public road) is an entranceway described as 50 feet wide and 250 feet long with a curbing at the westerly end of same. This entrance had a yellow line running east and west dividing it. Plaintiff entered from Parkway and traveled west along the entrance to a few feet north of said dividing line. After traveling the length of the entrance (250 feet) and a car length more, where cars from the parking lot approach the entrance from all angles, plaintiff turned on his left turn signal intending to make a left turn. At this time he looked ahead and saw no cars close to him, except one moving slowly near the theatre about 370 feet away. He then proceeded to his left and had reached a point where the front of his automobile was about even with the south curb of the entrance when his attention was directed by the screech of tires to defendant's car approaching from his right. Plaintiff applied his brakes and stopped

immediately but was struck by the front of defendant's car on his right front fender, the impact moving him five or six feet to his left. Plaintiff did not see defendant's car approaching long enough to determine its speed. However, Mrs. Jennings, a disinterested witness who was driving her car across the parking area toward the entrance (exit for her), which was the car plaintiff had observed when he made the turn to his left, testified that she was moving at 15 miles per hour when she saw plaintiff preparing to make a left turn from the entrance. She stated that when he crossed her lane he was struck by the car of defendant which had come from behind her, passed her on the left in the face of incoming traffic at 40 miles per hour, then proceeded to cross in front of her to precede her to the exit.

The lower court declared plaintiff guilty of contributory negligence as a matter of law because of his admission that he had an unobstructed view ahead of him for 600 feet as he proceeded up the driveway, and that he did not see the defendant until shortly before the impact. However, we think the lower court erred when it said that the defendant's vehicle was in plain view for that distance. There is undisputed testimony that the distance from the curbing at the inner terminus of the entrance to the front of the theatre was 370 feet; and Mrs. Jennings testified that after rounding that corner of the theatre she was driving at 15 miles per hour toward the entrance when the defendant came from behind her, passed her at 40 miles per hour, then cut in front of her and struck the plaintiff. Whether the defendant was following her as she rounded the corner or caught up with her after she did so is not shown by the evidence. However, the admission of plaintiff that he had a view of 600 feet ahead of him as he entered the parking area, and before he made his left turn, does not preclude the possibility that the de-

fendant's car was hidden by the car of Mrs. Jennings at a much closer distance to plaintiff at the time defendant suddenly pulled out and around Mrs. Jennings. Under the circumstances it could be reasonably inferred that when plaintiff commenced his turn defendant's car was not in view.

This is not such a clear case as to justify the declaration of contributory negligence on the part of plaintiff as a matter of law by the lower court. *Paull v. Meyers,* 200 Pa. Superior Ct. 74, 186 A. 2d 849 (1962) ; *Griffith v. Mount Lebanon Heating and Roofing Company,* 192 Pa. Superior Ct. 405, 162 A. 2d 237 (1960). The questions of plaintiff's negligence and proximate cause were properly left to the jury and its findings should not have been overruled.

Judgment for defendant reversed and directed to be entered for plaintiff on the verdict.

DISSENTING OPINION BY ERVIN, P. J.:

I must respectfully dissent from the majority opinion in this case because I am convinced that plaintiff was contributorily negligent as a matter of law.

On April 3, 1964 at or about 4 p.m. the plaintiff had entered a 50-foot wide driveway leading into a parking area at the Lawrence Park Shopping Center in Delaware County, Pennsylvania. The plaintiff had turned into the driveway from a street called Parkway. The distance from that street to the rear parking area is 250 feet. There is a curbing from Parkway to the rear parking lot on the southerly side of the driveway. From the end of the curbing to the rear of a certain theater also along this straight driveway, is a distance of 200 feet. The distance from the rear of the theater to the front of the theater along said driveway is 170 feet. There is a total distance of 620 feet from the entrance at Parkway to the front of the theater along the 50-foot wide driveway.

The plaintiff entered the driveway and proceeded to a point one car length, approximately 20 feet, west of the end of the curbed area, or about 270 feet, whereupon, with his left turn signals on, he proceeded to make a left-hand turn.

The plaintiff was asked on direct examination by his own counsel as follows: "Q. Now before you made your left turn did you make observations in the opposite direction? A. Yes, sir, before I made my left turn I looked up ahead and there was no visible cars close to me, just a car up at this point at the movie, the far end of the movie, there is a sort of hump there and a car sitting on there moving towards me very slowly, and that is all I saw. Q. And then what did you do at that point? A. Well, at that point, thinking that everything was clear for me, I gave another look this way, and turned into this area here. Q. All right, and when you made your left turn, how far did you get before your attention was attracted to anything else? A. Oh, I was right about in this area here, because my front end was practically with this curb line. Q. And what attracted your attention to any other vehicle? A. The squealing of tires on the paving, or brakes or whatever you want to call it. Q. And did you look up at that point? A. Yes, at that point I jammed on my brakes because I didn't know actually what it was, when I looked around I saw this car coming down here very rapidly through my right passenger window. . . . Q. And what part of this defendant's vehicle struck what part of your car? A. Well, the front end of his car I believe struck my right front fender, passenger's front fender."

On cross-examination the plaintiff testified as follows: "Q. Now as a matter of fact, Mr. Gerisch, you never saw this other car until immediately prior to the impact, is that not correct? A. You are talking about the defendant's car? Q. Yes. A. Yes, sir. Q. And

yet there was nothing to obstruct your view in any way of seeing that car coming down towards you, is that not true, sir? A. That's right, sir, while I was looking up in that direction."

A witness, Donna C. Jennings, testified as follows: "Q. And where were you going at the time of the accident? A. I was on my way home, cutting across the shopping center in front of the theater. . . . A. I then turned right to go down toward Parkway. . . . Q. Now tell me what attracted your attention to the car driven by Joseph McElhone. A. Well, I heard him before I actually saw him, I heard the car. . . . Q. And where did you first see him? A. Just before I got to the theater. Q. And where was it, what was he doing? A. He went by me way over on the left side of me. Q. And when he went by on the left of you in which lane of traffic would that be? A. He would be going into the oncoming traffic. . . . Q. And what happened after he did that? A. Well he just kept going, he was traveling at least 40 miles an hour, and he gradually proceeded into his own lane ahead of me. . . . Q. And where was your car, how far had you gone forward by the time the accident had occurred? A. I was approximately to the middle of the theater by then. Q. So that during the time that you moved from the end of the theater to the middle of the theater do I understand your testimony that McElhone came around you and covered this distance down to the point of the accident? A. I was not right at the front of the theater, maybe 10, 15 feet away. Q. Starting 10 or 15 feet from the theater you went down to the middle of the theater, during which time the McElhone boy came around in front of you and down here and struck the Gerisch car? A. That is right."

It is clear from the record that the defendant, while approximately 350 feet from the collision, was in the westbound lane of the driveway, passing the Jennings

vehicle. His speed was approximately 40 miles per hour. The defendant passed the Jennings vehicle and returned to the eastbound lane and proceeded eastwardly until he struck the plaintiff's vehicle, which was making a left-hand turn. The Jennings vehicle had proceeded east on the driveway midway along the theater when the collision took place. She had proceeded only 85 to 100 feet and was still approximately 250 feet from the scene of the collision. The plaintiff admitted he did not see the defendant's approaching car until immediately before the impact when he looked up after hearing the screech of brakes and tires.

Plaintiff offered Exhibit No. 5, a photograph of the scene, which shows the clear view that plaintiff had. Only a blind man could have failed to see the defendant's approaching car. Under the testimony and the exhibit, defendant's vehicle was in clear view for at least 350 feet. It was not hiding behind the Jennings' car waiting to jump out at the plaintiff as suggested by the majority opinion.

Under these facts, plaintiff either failed to make the observation that he said he made, or if he did make the observation, he did not see what was obviously there. The plaintiff testified both on direct and cross-examination that he did not see the defendant's approaching vehicle until immediately prior to the collision. *Smith v. United News Co.*, 413 Pa. 243, 196 A. 2d 302; *Perpetua v. Phila. Transportation Co.*, 380 Pa. 561, 112 A. 2d 337; *Favino v. Myers*, 164 Pa. Superior Ct. 445, 65 A. 2d 689.

In determining this issue I am mindful that a finding of contributory negligence as a matter of law must be supported by a record that inescapably leads to that conclusion; otherwise, the question is one for determination by the jury. This is such a record.

I would affirm the order of the court below granting judgment n.o.v.

WATKINS, J., joins in this dissent.