132 N.J. Super. 71 (1975)
332 A.2d 222
MARY REKIEC AND CHESTER REKIEC, PLAINTIFFS-RESPONDENTS AND CROSS-APPELLANTS,
v.
TONY ZUZIO, ANNA E. MURPHY AND OLD BRIDGE FIRST AID & RESCUE SQUAD, DEFENDANTS AND THIRD PARTY PLAINTIFFS-RESPONDENTS,
v.
PTL. GREENLEE AND TOWNSHIP OF EAST BRUNSWICK, A MUNICIPAL CORPORATION OF NEW JERSEY, THIRD PARTY DEFENDANTS-APPELLANTS AND CROSS-RESPONDENTS. ARLENE COLYER AND ASA COYLER, PLAINTIFFS-RESPONDENTS AND CROSS-APPELLANTS,
v.
TONY ZUZIO, ANNA E. MURPHY, OLD BRIDGE FIRST AID & RESCUE SQUAD OF MADISON TOWNSHIP, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS, AND PTL. GREENLEE AND TOWNSHIP OF EAST BRUNSWICK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS. TONY ZUZIO, PLAINTIFF-CROSS APPELLANT,
v.
ANNA E. MURPHY, OLD BRIDGE FIRST AID & RESCUE SQUAD OF MADISON TOWNSHIP, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS, AND TOWNSHIP OF EAST BRUNSWICK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, AND PATROLMAN GERALD GREENLEE, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 9, 1974.
Decided January 20, 1975.
*74 Before Judges CONFORD, MICHELS and MORGAN.
Mr. Henry H. Rubenson argued the cause for appellants East Brunswick and Greenlee (Mr. Rubenson, attorney; Mr. William J. Cleary on the brief).
Mr. Douglas T. Hague argued the cause for cross-appellants Rekiec (Messrs. Wilentz, Goldman & Spitzer, attorneys).
Mr. Peter A. Piro argued the cause for respondent and cross-appellant Zuzio (Messrs. Haskins, Robottom & Hack, attorneys).
Mr. Thomas B. Mannion argued the cause for respondents Murphy & Old Bridge First Aid (Messrs. Lynch, Mannion, Lutz & Lewandowski, attorneys).
Mr. William E. Flynn argued the cause for respondents Colyer (Messrs. Antonio & Flynn, attorneys).
The opinion of the court was delivered by MORGAN, J.A.D.
Defendant Township of East Brunswick appeals from judgments entered against it in connection with three consolidated personal injury actions arising out of an intersection collision between an ambulance on an emergency mission and two other automobiles. The accident *75 occurred on September 9, 1969 at the intersection of Highway 18 and Old Bridge Turnpike. Liability issues were tried first with the result that East Brunswick was held as the sole culpable defendant. After motions for a new trial and leave to appeal were denied, the damage aspects of the case were tried. The result of the first damage trial was set aside on the ground of excessiveness as to all five plaintiffs. The results of the second damage trial, with one exception, were substantially reduced by the court by way of remittitur.
East Brunswick is appealing not only the judgments as to liability but also the remitted results of the second damage trial, contending that the verdicts even as reduced are still excessive. All personal injury claimants have cross-appealed not only the trial court's order reducing their verdicts (and in the case of plaintiff Colyer from the order granting the new trial as to damages) but also as to those liability judgments exonerating all defendants other than East Brunswick.
An evaluation of the issues projected for resolution in this appeal requires an understanding of the scene of the accident, and the manner in which the accident occurred and the case was tried. Route 18 is a major north-south thoroughfare consisting of six lanes of travel, the three northbound lanes of which are separated from the three southbound lanes by a cement barrier. Its intersection with Old Bridge Turnpike, which runs in an east-west direction, is controlled by a set of traffic lights the only notable feature of which is that drivers on Old Bridge Turnpike headed west are given a five-second advantage over drivers heading east when the lights controlling that road turn green in their favor. In other words, the light controlling westbound traffic on the Turnpike turns green five seconds before it turns green for cars crossing Route 18 in the opposite direction. This arrangement is presumably to permit westbound drivers to complete left hand turns before eastbound traffic is permitted to move.
*76 The three drivers directly involved in the collision itself were plaintiff-defendant Tony Zuzio, Herbert Stuhler (not a party to any of these actions), and Anna Murphy, the ambulance driver employed as such by defendant Old Bridge First Aid and Rescue Squad. Zuzio's vehicle, before the accident, was stopped for a red light facing in an easterly direction on Old Bridge Turnpike waiting for the light to turn green in his favor so that he could then cross Route 18. Stuhler's vehicle was on the opposite side of Route 18, also on Old Bridge Turnpike but facing in a westerly direction and waiting for the red light for which he was stopped to turn green in his favor. Anna Murphy's ambulance, before this accident was proceeding north on Route 18 on an emergency mission, with emergency signal equipment in full operation, convoyed by two patrol cars, one in front of her and one behind, both being operated by police officers of defendant East Brunswick. Officer Marrero was operating the lead car and Officer Greenlee was operating the escort vehicle following the ambulance. Greenlee was named as a party defendant. Marrero was not, although the car he was operating was referred to in some of the pleadings as having been negligently operated. The presence of these two police vehicles in the convoy was the occasion for joining East Brunswick as a defendant in these actions.
The personal injury claimants are Tony Zuzio, also a defendant at the suit of the other plaintiffs; Mary Rekiec, a passenger in the Zuzio vehicle, with her husband suing per quod, and Arlene Colyer, a passenger in the ambulance, with her husband, Asa Colyer, suing per quod.
There was little dispute as to the general sequence of events which led to the collision. The traffic lights controlling this intersection turned green for Zuzio and Stuhler and red for Route 18 traffic as Officer Marrero, operating the lead patrol car, approached this intersection. According to Marrero's best estimate, he was approximately 50 to 75 yards from the intersection when he observed the red light. There are varying estimates of somewhere between *77 35 m.p.h. and 50 m.p.h., as to Marrero's speed as he went through the intersection, but he and most of the other witnesses to this accident testify that he did so with dome lights flashing and sirens sounding. Zuzio testified he neither saw nor heard either the lead patrol car or the ambulance with which he collided. His passenger, Rekiec, saw the dome lights on Marrero's vehicle and admits to perhaps hearing the ambulance siren immediately before the collision. The clear weight of the evidence, however, confirms the fact that all emergency signal equipment was in full operation with respect to all three vehicles in the convoy.
As Marrero entered the intersection, he noted that all cross traffic on Old Bridge Turnpike was stopped and he passed through the intersection without incident approximately 75 to 100 yards before the ambulance. The ambulance followed Marrero through the red light and into the intersection where it collided with Zuzio's vehicle which had moved into the intersection when the light turned green in his favor. By his own admission, Zuzio looked neither to the left nor to the right before or as he was proceeding through the intersection. He testified that he was under the impression that the green light provided him with an absolute right of way and it appears that he was also under the impression that he was thereby absolved from the obligation of making any observations for other vehicles or conditions in the intersection. The force of the collision between the Zuzio car and the ambulance propelled both vehicles into the Stuhler vehicle which had been waiting at or slightly into the intersection for the convoy to pass through, notwithstanding the green light in his favor. Indeed, he testified that when the light turned green in his favor (five seconds before it turned green for Zuzio) he started into the intersection when he observed Marrero's vehicle and then the following ambulance. He then stopped to permit the convoy to pass through, all vehicles of which were operating all emergency signal devices.
*78 The case went to the jury on special interrogatories as to all defendants except Officer Greenlee whose non-liability was declared by the court as a matter of law. On request of the jury, the court repeated its charge with respect to proximate cause which was framed in terms of a defendant's negligence being "the proximate cause of an accident." [Emphasis supplied] No objections were made to either the original charge or the repetition of the charge concerning proximate cause. Thereafter, the jury returned a verdict holding the Township of East Brunswick as the sole culpable defendant, exonerating from liability the two drivers directly involved in the collision, Zuzio and Murphy. East Brunswick's motion for a new trial on the ground that the verdicts were against the weight of the evidence and on the other grounds asserted in this appeal was denied on the ground that a fact question was presented for jury determination and the court would therefore not interfere with their conclusion. As noted above, East Brunswick's motion for leave to take an interlocutory appeal was denied and the two damage trials ensued with the general results already described.
[In the portions of the opinion being omitted here, the court found reversible error in the admission of evidence which unexpectedly raised an issue concerning East Brunswick's responsibility for stationing a police officer at every intersection through which an emergency convoy passes].
East Brunswick, joined by plaintiffs Colyer, contends that the verdict exonerating Zuzio from liability was against the weight of the evidence. In support of this contention, appellants refer to the clear weight of evidence establishing that the three emergency vehicles were operating all emergency signalling devices as they approached and entered the intersection. Zuzio admitted, by his own testimony, his total failure to make any observations at all before entering or as he was crossing the intersection on the green light. It is undisputed, and admitted by Zuzio himself, that he saw neither the Marrero vehicle pass through the intersection directly *79 in front of him or the ambulance at any time prior to the collision. As noted previously, Zuzio was under the impression that a green light in his favor absolved him from any necessity of making even minimal observations for other vehicles in the intersection. If such was the reason for his conduct, he was clearly in error for such is not the law in this State.
The key to New Jersey law concerning the obligations imposed on a driver favored with a green light can be found in the New Jersey Motor Vehicle Code, N.J.S.A. 39:4-105. Section 105 provides as follows:
Traffic signals or signal devices shall conform strictly with the provisions of this article. A three-color system shall be used: red, amber and green. Green means permission for traffic to go, subject to the safety of others or the specific directions of an officer, official sign or special signal * * * [Emphasis supplied]
Clearly, a green light does not confer on a driver favored with it an unqualified right to proceed. His right to do so is, according to statutory language, "subject to the safety of others * * *" and therefore the fundamental obligation of using due and reasonable care under the circumstances persists despite the green light in his favor. Although research has disclosed no New Jersey case specifically defining the duty imposed on such a favored driver by section 105, the clear weight of authority elsewhere imposes on the favored driver the continuing obligation of exercising due care for the safety of others. He may not disregard the ordinary precautions of maintaining a lookout and observing conditions on the street he is crossing simply because he is proceeding with a green light. Musi v. De Sarro, 370 F. 2d 113 (3d Cir.1966); Smith v. United News Company, 413 Pa. 243, 196 A.2d 302 (Sup. Ct. 1964); and see 3 Blashfield, Automobile Law & Practice (Perm. ed. 1935) § 114.42, pp. 92-99.
While a jury may properly conclude that the driver favored by a green light will be acting reasonably if he *80 makes only cursory observations of the intersection he is entering as contrasted, for example, with the weightier obligation imposed upon a driver going through a stop sign, they may not absolve him completely from any duty of observation in this regard. The well-known facts that some motorists are negligent and that some will attempt to "beat a light", are common knowledge to reasonably prudent drivers on our highways in the light of which their own conduct as such drivers will be appraised. Foreseeability of danger has always been a material element in adjudging negligent conduct. Thus, no driver in this State may prudently ignore the constant possibility of what just occurred in this case, i.e., encountering a vehicle on an emergency mission going through a red light. Such emergency vehicles are given the right, under specified statutory conditions, to go through a red traffic signal, see Finderne Engine Co. v. Morgan Trucking Co., 98 N.J. Super. 421 (App. Div. 1968), and the ordinary driver may not operate his vehicle oblivious to the potential hazard so created when he crosses an intersection.
Section 105 was not charged to the jury. No party requested that it be included in the court's charge and no one, not even East Brunswick, complains on appeal of its omission. The only instruction given the jury with respect to the duty imposed upon Zuzio was to the effect that the green light did "not accord him the absolute right of way." No one objected to the inadequacy of this charge. Nonetheless, the absence of a proper instruction to the jury concerning the duty imposed upon a driver favored with a green light may go some distance in explaining the result reached with respect to Zuzio's nonliability.
The verdict in favor of Zuzio is, in our view, incompatible with the undisputed evidence when considered in the above described legal context, and must therefore be set aside. Zuzio was oblivious to what was clearly present  a convoy of three vehicles with full emergency signalling equipment in full operation. He was oblivious because he *81 did not look. He had to traverse the three southbound lanes of Route 18 before encountering the ambulance and still did not see it despite the almost undisputed fact that its sirens and flashing lights were operating. Indeed, he never saw the ambulance before the collision according to his own admission, which merely corroborates his own testimony that he never looked. In these circumstances, the verdict, not only exonerating Zuzio from liability but entitling him to recover for his own injuries, is so completely against the weight of the evidence as to constitute a clear miscarriage of justice. It must be set aside.
Although no party other than East Brunswick impugns the verdict in favor of the ambulance driver and her employer, all being content with the judgment against East Brunswick, we believe that, having vacated those judgments and ordered a new trial as to East Brunswick and Zuzio, we should in the interest of justice direct a reappraisal by the next trial jury of the liability of the ambulance driver and her employer as well. Prima facie there is at least as tenable a basis for determination of negligence against the ambulance driver as against the municipality. Moreover, the next trial jury might possibly conclude that the former, rather than either Zuzio or the municipality was liable, leaving plaintiffs Rekiec and Colyer without any satisfaction whatever. We consequently direct that the new trial on liability be conducted as between all parties except Greenlee. A pretrial order should be entered wherein each claimant states precisely the basis or bases on which he posits the negligence or liability of any other party.
We wish to note, for guidance of the trial court on the new trial, that error was committed in charging the jury that the plaintiffs had the burden of proving that a defendant's negligent conduct was the proximate cause of the accident, rather than a proximate cause thereof, as required by the case of Ellis v. Caprice, 96 N.J. Super. 539, 549 (App. Div. 1967). No one objected to the original charge, or even to a repetition of it in answer to a jury request *82 for further instructions, and we have declined to regard this charge as plain error. Although not the occasion for the present reversal, this error may have contributed to the result and should be avoided on the liability retrial.
The awards in the first damage trial were clearly excessive, and there was no error in setting that verdict aside. The results of the second damage trial, as remitted by the trial court, will not be disturbed since they are not, in our view, excessive.
Tony Zuzio, Anna E. Murphy and Old Bridge First Aid and Rescue Squad contend that they should not be bound by the damage award, as remitted, since they did not participate as defendants in the damage trial because they had been exonerated by the jury as to all liability. Following oral argument in this case, Pappas v. Santiago, 66 N.J. 140 (1974) was decided. This court solicited comment from the interested attorneys concerning the possible application of the Pappas case to bind Zuzio, Murphy and Old Bridge First Aid and Rescue Squad to the damage awards already rendered.
We haxe examined the comments received and conclude that none of them provide any reason for holding Pappas inapplicable in the present context. Consequently, Tony Zuzio, Anna E. Murphy and Old Bridge First Aid and Rescue Squad are bound by the remitted damage awards in the event any or all of them are inculpated on the retrial.
Reversed and remanded for further proceedings in accordance with this opinion.