82 N.J. Super. 142 (1964)
197 A.2d 16
HENRY VARLARO, PLAINTIFF-RESPONDENT,
v.
ROBERT P. SCHULTZ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 13, 1964.
Decided January 23, 1964.
*144 Before Judges GOLDMANN and COLLESTER.
Mr. Abraham J. Slurzberg argued the cause for appellant (Messrs. Adler & Adler, attorneys).
Mr. Lewis M. Holland argued the cause for respondent (Messrs. Warren, Chasan, Leyner & Holland, attorneys and of counsel; Mr. Holland on the brief).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendant appeals from a $30,000 Law Division judgment based upon a unanimous jury verdict in an intersectional accident case, finding defendant guilty of *145 negligence in the operation of his automobile and plaintiff motorcycle officer free of contributory negligence. He also appeals the denial of his motion for a new trial. Defendant claims that (1) the trial court erred in denying his motion for judgment of dismissal at the close of plaintiff's case; (2) the court failed to instruct a jury on all the fundamental legal principles controlling the case, thereby affecting his substantial rights; and (3) the verdict was against the weight of the evidence.
One of the three judges of the Part being unable to attend the oral argument because of a heavy storm, counsel agreed that the matter be heard and determined by the two remaining judges.

I.
On March 1, 1960 plaintiff, a motorcycle traffic officer of West New York, received a radio message from police headquarters directing all units to proceed to 60th Street and River Road, where a car had gone over a cliff. Plaintiff at once turned on the two blinker lights between the motorcycle handlebars and, with his siren sounding, proceeded down 61st Street to Palisade Avenue and then to 60th Street, the main street of the town. He saw an ambulance, emergency truck and a police car proceeding east on 60th Street, and fell in line some 50'-75' behind them. All were sounding their sirens. As the four vehicles continued east on 60th Street, two West New York employees in a Public Works Department truck, D'Aniello and Tritt, heard the sirens and fell in behind plaintiff's motorcycle.
Plaintiff's route took him across Park Avenue, the intersection immediately before Boulevard East. The block from Park to the Boulevard is a short one, about 180', and a "little hilly" down toward the Boulevard. As plaintiff approached Boulevard East, with his blinker lights going and siren "blasting," the police car was about 100' in front of him, the first three vehicles in the motorcade having travelled at a *146 somewhat greater speed. He testified that his siren could be heard for quite a distance. Defendant's witness Hamza, employed in a garage on 60th Street, west of Park Avenue, was working in the garage pit located some 100' from the street when he heard the siren. He climbed out of the pit in time to see plaintiff pass on his motorcycle, and he described its speed as "normal fast."
Traffic on 60th Street had yielded to the emergency vehicles by pulling over to the curb and stopping. The three vehicles preceding plaintiff passed through the intersection at Boulevard East without incident, and continued easterly. Plaintiff testified that after having travelled a little less than half the length of the block from Park Avenue to Boulevard East, and when he was 50'-80' past Park, he saw defendant's car come from his left on Boulevard East and enter the intersection. The car slowed down, but then "just kept straight on going." Plaintiff slowed his motorcycle by applying both the foot and hand brakes, but immediately recognized that he could not stop in time to avoid a collision. He testified that he considered jumping off the motorcycle, but was concerned for the safety of a group of people waiting on the corner for a bus. On the other hand, going downhill "if I hit the handbrake the front end of the machine goes down and I go flying over." Since defendant at the moment was following a straight course on Boulevard East, plaintiff cut to the left and tried to go around the rear of the car. However, defendant, instead of continuing in a straight line, started to turn left. Plaintiff struck the car on the right side, ten inches from its rear end. Plaintiff testified that as he approached the intersection where the collision occurred, he was travelling at between 35 and 45 miles per hour. The actual impact occurred on the northwest side of the intersection. Defendant's car had by then gone partially into the right-hand eastbound lane of 60th Street extended.
The day was clear and dry. Defendant testified he was proceeding south along Boulevard East at about 20 miles per hour. The traffic light at the intersection of 60th Street was *147 green in his favor. (Plaintiff did not remember if he observed the light or its color.) Defendant said that as he approached the intersection he took his foot off the accelerator and slowed the car somewhat. Prior to entering the intersection he made an observation to his left and right, saw nothing, heard nothing, and continued on. He stated that when he was at about the center of the intersection he looked to his right and saw plaintiff's motorcycle about 80' away. It was then that he heard a siren. He turned his car to the left to avoid a collision, but the motorcycle crashed into its right rear. His car came to rest at the southeast curb of the intersection. Defendant insisted that before entering the intersection he did not hear the blowing of any siren or see any cars go by.
Both D'Aniello and Tritt, the Public Works employees riding in the truck directly behind plaintiff, testified that the sirens and blinker lights of plaintiff's motorcycle and the three emergency cars in front of him were in operation continually as they proceeded east on 60th Street toward Boulevard East. They corroborated the position of the motorcycle and defendant's car, the movement of each vehicle, as plaintiff had testified.
Defendant's motion for dismissal at the close of plaintiff's case was denied. The trial proceeded with the production of defendant's proofs, and the jury then returned the indicated verdict. Defendant's motion for a new trial was denied.

II.
Defendant's first argument is that plaintiff failed to prove a prima facie case, and therefore his motion for judgment of dismissal should have been granted. It is defendant's position that plaintiff had the burden of proving he drove his motorcycle "with due regard for the safety of all persons," i.e., that he was not guilty of contributory negligence. This contention is based upon defendant's interpretation of the second paragraph of N.J.S.A. 39:4-91:
*148 "The driver of a vehicle upon a highway shall yield the right of way to any authorized emergency vehicle when it is operated on official business, or in the exercise of the driver's profession or calling, in response to an emergency call or in the pursuit of an actual or suspected violator of the law and when an audible signal by bell, siren, exhaust whistle or other means is sounded from the authorized emergency vehicle and when the authorized emergency vehicle, except a police vehicle, is equipped with at least one lighted lamp displaying a red light visible under normal atmospheric conditions from a distance of at least five hundred feet to the front of the vehicle.
This section shall not relieve the driver of any authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall it protect the driver from the consequences of his reckless disregard for the safety of others." (L. 1928, c. 281, Art. VIII, §§ 13 and 15, as amended by L. 1951, c. 23, § 49.)
The Motor Vehicle Traffic Act, R.S. 39:4-1 et seq., as amended, established a standard of conduct in the operation and management of motor vehicles on our highways. Niles v. Phillips Express Co., 118 N.J.L. 455, 460 (E. & A. 1937). The statute is penal, and a violation of any of its provisions is prosecuted in a quasi-criminal action. See N.J.S.A. 39:4-203. It gives no private right of action for injuries resulting from a violation, but its provisions may affect private rights upon common law principles applicable to actions of negligence. Doyon v. Massoline Motor Car Co., 98 N.J.L. 540, 545 (E. & A. 1923). A violation of the Traffic Act does not amount to negligence per se, but is a circumstance to be considered by a jury in determining from all the facts and circumstances of the case whether there was negligence on the part of the person whose conduct is being investigated. Jones v. Lahn, 1 N.J. 358, 362 (1949).
Defendant concedes that at the time of the accident plaintiff was driving an emergency vehicle in response to an emergency call. He does not seriously contend that plaintiff failed to give the requisite warnings, but does raise some question as to whether the proofs establish that he could have seen plaintiff's blinker lights or heard his siren or the sirens of the three vehicles preceding the motorcycle.
The nub of defendant's argument is, as already noted, that it was plaintiff's burden to establish affirmatively that he *149 was free from contributory negligence, and this by reason of the statutory admonition that the driver of an emergency vehicle is not relieved from the duty of due care. Defendant freely concedes that the burden of proving contributory negligence is normally on a defendant, and the plaintiff is not required to prove its absence as a part of his case. Kaufman v. Pennsylvania R. Co., 2 N.J. 318, 324 (1949). We do not read the statute as altering this normal allocation of the burden of proof.
The Legislature, in enacting N.J.S.A. 34:4-91, determined that it was in the public interest to exempt emergency vehicles from certain traffic regulations normally controlling. The first paragraph establishes the circumstances in which police and other emergency vehicles have the right of way. The second merely provides that, assuming the prerequisites for the right of way have been met, the operator of a police vehicle responding to an emergency call is not freed from the exercise of any care beyond merely giving the warning required by the statute. However, the fact that N.J.S.A. 39:4-91 does not give the operator of an emergency vehicle untrammeled dominion over the roads does not lead to the conclusion that he must affirmatively prove absence of contributory negligence in a civil action for damages against a motorist who fails to comply with the statute.
Defendant's interpretation of the statute would place a greater burden upon the driver of the authorized emergency vehicle in an action brought to recover damages resulting from the negligence of another, than upon an ordinary motorist. If defendant's interpretation is valid then, by a parity of reasoning, the driver of the emergency vehicle who is made defendant in an action for damages grounded in negligence, and who seeks to rely on N.J.S.A. 39:4-91, would have to prove that he was not negligent. This would result in a subversion of the manifest legislative purpose and fly in the face of a common sense construction of the statute.
Defendant cites many cases which merely define the degree of care which the operator of an emergency vehicle *150 must exercise. None of them stands for the proposition that the operator of such a vehicle must affirmatively demonstrate that he was exercising due care. The degree of care to be exercised by such an operator is well stated in 7 Am. Jur.2d, Automobiles and Highway Traffic, § 357, pp. 903-4 (1963):
"* * * The true rule would seem to be * * * that the degree of care required is * * * that the operator of an emergency vehicle, as well as other operators, must exercise ordinary care to prevent injury or damage to others, which means care commensurate with the circumstances, but that the exigencies of an emergency may require the operator of an emergency vehicle to take risks, particularly as to speed of travel, which it would be negligence for a traveller under ordinary conditions to take. In other words, the measure of duty of an operator of an emergency vehicle responding to an emergency call is due care under the circumstances, and the operator of an emergency vehicle on an emergency call cannot be expected to exercise the same care that the law requires of the ordinary motorist, who has no emergency duty to perform."
This concept is a familiar one. In the law of negligence, conduct is customarily tested contextually  in terms of how a reasonable man would act under like circumstances. 2 Restatement, Torts, § 283, p. 741 et seq. (1934); and see Ambrose v. Cyphers, 29 N.J. 138, 144 (1959), where our highest court observed that the degree of care which may reasonably be required is directly related to the variable element of risk of harm. To the same effect is Isherwood v. Douglas 34 N.J. Super. 533, 543 (App. Div. 1955), and see Prosser on Torts (2d ed. 1955), § 33, p. 147.
As part of his argument that the trial judge erred in denying the motion for a judgment of dismissal at the end of plaintiff's case, defendant asserts that the proofs clearly demonstrate that plaintiff was guilty of contributory negligence as a matter of law, and therefore the motion should have been granted. That contention flies in the face of the proofs. Even were we to subscribe to defendant's thesis that it was incumbent upon plaintiff to prove the absence of contributory negligence, our careful consideration of plaintiff's proofs establishes beyond peradventure that a jury question of contributory negligence was raised.
*151 On a defendant's motion for dismissal the trial judge must accept as true all evidence which supports the view of the plaintiff and must give him the benefit of all inferences and deductions which may logically and legitimately be drawn from the evidence. And where fair-minded men might honestly differ as to the conclusions to be drawn from the proofs, the question at issue is one for the jury's determination. These principles are now so well established in our jurisprudence as to require no citation of authority.
As we have repeatedly held, only in the clearest case of contributory fault, where a contrary hypothesis is not fairly admissible, does the question become one of law for decisive action by the court. Battaglia v. Norton, 16 N.J. 171, 179 (1954); Poland v. Parsekian, 81 N.J. Super. 395, 402 (App. Div. 1963). Our reading of the record convinces us that defendant's motion for dismissal at the close of plaintiff's case was properly denied.

III.
Defendant next contends that his substantial rights were affected by the trial court's failure to instruct the jury on all the fundamental principles of law applicable to the case. Defendant's attorney raised no objection to the charge; indeed, when asked by the trial judge whether he had any exceptions, his answer was, "No, I think the court covered all of mine as well as the plaintiff's requests." Nor was the present claim of inadequate instructions raised by defendant on his motion for a new trial.
Our rules provide that no party may urge as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of the objection. R.R. 4:52-1. Defendant recognizes the requirements of the rule, but seeks to escape their impact by raising the issue of plain error under R.R. 1:5-3(c), made applicable here by R.R. 2:5. He contends  and correctly so *152  that it is the obligation of the trial judge to instruct the jury clearly on the rules of law by which the evidence is to be examined and the issues determined.
The claim made is that the judge did not instruct the jury as to the standards of conduct fixed by N.J.S.A. 39:4-91  that "it was incumbent upon the plaintiff to prove as part of his burden that he obeyed each of the conditions of the statute, and particularly that he exercised due care for the safety of all persons." We find no merit in the argument.
We have already disposed of the burden of proof issue. The court read N.J.S.A. 39:4-91 to the jury, as well as N.J.S.A. 39:4-92, which prescribes exactly what a driver like defendant must do upon the immediate approach of an authorized emergency vehicle giving audible signal and equipped as required by section 39:4-91, unless otherwise directed by a police or traffic officer. Following the reading of these two sections he instructed the jury that violation of a traffic provision does not in itself constitute actionable negligence, but may be considered together with all other circumstances of the case in determining whether the alleged violator was guilty of negligence which was a proximate cause of the accident. He also charged that if the jury found the statute to have been violated by defendant, such violation did not constitute a sufficient reason for plaintiff to fail in his own duty of exercising reasonable care.
Defendant's objection to the charge, in addition to the argument as to the burden of proving contributory negligence just mentioned, appears to rest primarily on the fact that the trial court did not dissect and explain each word of the statute. The statute is entirely clear and was adequately presented by the court.
Defendant further argues that the jury was not sufficiently apprised as to the method to be used in evaluating conflicting proof. As we read the charge, the instructions given were entirely adequate to inform the jury of the elements to be considered in arriving at a verdict, including such matters as negligence, contributory negligence, the two statutory *153 provisions referred to above and the relation of any violation of them to negligence, proximate cause, emergency, credibility and damages. The charge was sufficiently comprehensive and informative. We find no plain error.

IV.
Defendant's final point is that the verdict was against the weight of the evidence  a ground asserted on the motion for a new trial. R.R. 4:61-1(a) provides the perspective for the trial judge in passing upon such a motion:
"* * * On a motion for a new trial in an action tried before a jury, the trial judge shall not set aside the verdict of the jury as against the weight of the evidence unless, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that the verdict was the result of mistake, partiality, prejudice or passion."
The evidence here was fairly susceptible of divergent inferences. The trial judge, acknowledging there was a sufficient factual basis upon which the jury could competently arrive at its verdict as to liability, properly refused to substitute his judgment for that of the jury.
R.R. 1:5-3 (a), made applicable to this court by R.R. 2:5, delineates our scope of review. We may not set aside a verdict as against the weight of the evidence unless, having given due regard to the opportunity of the trial court and the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that the verdict was the result of mistake, partiality, prejudice or passion. Our role in reviewing a trial judge's denial of a motion for a new trial is far more limited than that of the judge. Kulbacki v. Sobchinsky, 38 N.J. 435, 446 (1962); and see Hartpence v. Grouleff, 15 N.J. 545, 549 (1954). The action of a trial judge should not be disturbed unless it clearly and unequivocally appears that there was a manifest denial of justice under the law.
*154 Applying the pertinent rules and the construction given them by our appellate courts, we find that the verdict was not against the weight of the evidence and there was no error in the denial of a new trial.
Affirmed.