98 N.J. Super. 421 (1968)
237 A.2d 624
FINDERNE ENGINE CO., PLAINTIFF-APPELLANT,
v.
MORGAN TRUCKING CO., ET AL., DEFENDANTS-RESPONDENTS.
ANDREW KWIATEK, PLAINTIFF-APPELLANT,
v.
MORGAN TRUCKING CO., ET AL., DEFENDANTS-RESPONDENTS.
ALFRED R. KLINE, PLAINTIFF-RESPONDENT,
v.
MORGAN TRUCKING CO., ET AL., DEFENDANTS-RESPONDENTS, AND ANDREW KWIATEK, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 11, 1967.
Decided January 3, 1968.
*422 Before Judges CONFORD, COLLESTER and LABRECQUE.
*423 Mr. Albert M. Neiss for appellants.
Mr. Michael D. Loprete for respondents (Messrs. Mattson, Madden, Polito & Loprete, attorneys; Mr. LeRoy H. Mattson, of counsel).
The opinion of the court was delivered by CONFORD, S.J.A.D.
Plaintiff fire engine company and plaintiff Kwiatek, driver of its fire engine en route to a fire call, sued defendant trucking company and the operator of its tractor-trailer for property damages and personal injuries sustained in an intersection collision between the vehicles. The driver of a third vehicle, standing at the intersection at the time, who was injured when the truck struck his vehicle after colliding with the fire engine, sued the owners and operators of the fire engine and truck. The cases were tried together; the driver of the third vehicle was awarded a jury verdict against all defendants in his action, but plaintiffs in the instant action sustained a "no cause of action." In other words, the jury evidently found the drivers of both the fire engine and the tractor-trailer to have been negligent.
In plaintiffs' appeal the principal question raised pertains to alleged errors in the charge to the jury and failure of the trial court to charge certain of plaintiffs' requests.
A brief sketch of the evidence is necessary. The accident occurred when the fire engine was proceeding easterly on Route 28 through a red light at the intersection with Chimney Rock Road in Bridgewater Township. The truck was proceeding southerly on Chimney Rock Road and went into the intersection on a green light. The point of contact was the approximate center of the intersection. There was a line of cars which had stopped on Route 28, facing easterly and waiting for the traffic light to change from red to green. The fire engine went past them in the westbound lane but was veering to the eastbound lane when it entered the intersection. It was sounding its siren and *424 flashing its lights, but the driver of the truck testified he did not hear the siren, apparently because his cab windows were closed and his tractor engine was noisy.
Kwiatek, the fire engine operator, testified that when he was 275 feet from the corner he observed a Chevrolet coming south on Chimney Rock Road, followed at a 30-foot distance by the truck, and that then the Chevrolet pulled over to the curb and stopped, while the truck slowed down. He got ready to depress his brake pedal when he was 75 to 100 feet from the intersection, but thinking the truck would stop at the intersection he let his vehicle roll through, taking a "good look" to his right to make sure no traffic was coming from that direction. He did not look back to his left until his vehicle was ten feet into the intersection, then saw the truck "three seconds away * * * knew we were going to hit." The truck was then "well into the intersection." Kwiatek testified he was going 20 miles per hour, as was the truck. There was other testimony that the fire engine was going somewhat faster. Kwiatek admitted he lacked peripheral vision in his left eye.
The driver of the truck testified that the Chevrolet ahead of him went through the intersection (there was other testimony to the same effect). He made his first observation for cross-traffic when about 200 feet from the intersection but did not see the fire engine until he entered it, at which time that vehicle was 75 feet from the intersection.

I
The trial judge charged the jury the text of N.J.S.A. 39:4-91, which reads as follows:
"The driver of a vehicle upon a highway shall yield the right of way to any authorized emergency vehicle when it is operated on official business, or in the exercise of the driver's profession or calling, in response to an emergency call or in the pursuit of an actual or suspected violator of the law and when an audible signal by bell, siren, exhaust whistle or other means is sounded from the authorized emergency vehicle and when the authorized emergency vehicle, except *425 a police vehicle, is equipped with at least one lighted lamp displaying a red light visible under normal atmospheric conditions from a distance of at least five hundred feet to the front of the vehicle.
This section shall not relieve the driver of any authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall it protect the driver from the consequences of his reckless disregard for the safety of others."
He also charged that portion of N.J.S.A. 39:4-92 which deals with the specific obligation of a driver encountering the approach of an emergency vehicle giving an "audible signal" etc. to give it the complete right of way.
The judge charged the jury appropriately as to the effect of violation of the act:
"Now, in and of itself, a violation of the aforesaid laws do not constitute negligence, but may be considered together with all other circumstances of the case in determining whether the alleged violator of said laws was guilty of negligence which was the proximate cause of the accident."
He further charged:
"If you believe that Mr. Kwiatek, despite the operation of an emergency vehicle, failed to operate it with due regard for the safety of other persons, under the circumstances, then you might be justified in finding that he violated the said section of the traffic law.
If you find that the statute was violated by the defendant, Mr. Trotte, such violation of itself would not constitute a sufficient reason for the plaintiff, Mr. Kwiatek, to fail in his own duty of exercising reasonable care as an operator of an emergency vehicle under the circumstances of the case."
One of plaintiffs' grounds of appeal is based upon the court's having previously charged, after stating defendants' burden of proof to establish plaintiff-driver's contributory negligence, as follows:
"What is contributory negligence? We apply the same definition that I gave to you as to the defendant's primary negligence. So here the plaintiff was required to exercise for his own safety and the safety of others that degree of care which a reasonably prudent person would have exercised under the circumstances existing at the time of *426 the accident. If he failed to do that, and his own negligence proximately contributed in any degree to the production of the accident, then he, Mr. Kwiatek or the Engine Company, since any contributory negligence proved against Mr. Kwiatek would be attributable under the same law, respondeat superior, to the Engine Company, and the Engine Company would likewise not recover."
The essence of plaintiffs' position is that the court thus charged in effect that "the duties" of the respective operators of the two vehicles "were the same"; that they had requested charges which would have enabled the jury "to distinguish or differentiate between the degrees of care of the respective operators"; and particularly that the jury should have been told that "the operator of an emergency vehicle on an emergency call cannot be expected to exercise the same care that the law requires of the ordinary motorist, who has no emergency duty to perform." The last quotation derives from a portion of an excerpt from 7 Am. Jur.2d, Automobiles and Highway Traffic, § 357, at pp. 903-904, quoted in our opinion in Varlaro v. Schultz, 82 N.J. Super. 142, 150 (App. Div. 1964).
Also complained of is the refusal of the trial court to charge the jury certain language in an opinion of the Hoboken District Court in finding as trier of the facts in favor of firemen injured in an accident with a motorist, as set forth in Brockstedt v. Meltzer, N.J., 111 A. 812 (E. & A. 1920). The language merely justifies the public policy favoring giving emergency drivers the right of way. Neither the former Supreme Court nor the Court of Errors and Appeals on review adopted or approved any language in that opinion, but merely affirmed the judgment as based on findings of fact supported by the evidence. The language in question is not purported to constitute a statement of a rule appropriate for charging a jury, and there was no error in not charging it here. It is generally inappropriate to quote language contained in a judicial opinion in a charge to a jury unless so designed by the author of the opinion. Sherwood v. Miles Shoes of Toms River, Inc., 54 *427 N.J. Super. 129, 139 (App. Div. 1959), certification denied 29 N.J. 580 (1959); cf. Ambrose v. Cyphers, 29 N.J. 138, 149-50 (1959). To be distinguished is the fashioning of an appropriate charge in the court's language based upon authoritative expressions concerning the applicable law in an opinion. Sherwood, supra, at the page cited.
The substantial question here is whether there was prejudicial error in failing to charge the jury the excerpt from Am. Jur. quoted above. The full quotation, as it appears in the report in Varlaro v. Schultz, supra (82 N.J. Super., at p. 150) follows:
"* * * The true rule would seem to be * * * that the degree of care required is * * * that the operator of an emergency vehicle, as well as other operators, must exercise ordinary care to prevent injury or damage to others, which means care commensurate with the circumstances, but that the exigencies of an emergency may require the operator of an emergency vehicle to take risks, particularly as to speed of travel, which it would be negligence for a traveller under ordinary conditions to take. In other words, the measure of duty of an operator of an emergency vehicle responding to an emergency call is due care under the circumstances, and the operator of an emergency vehicle on an emergency call cannot be expected to exercise the same care that the law requires of the ordinary motorist, who has no emergency duty to perform." (emphasis ours.)
Plaintiffs' request to charge quoted only the last sentence of this excerpt.
It should first be noted that Varlaro decided only, in the factual context of a plaintiff motorcycle policeman on emergency duty colliding with defendant motorist at an intersection, that the trial court was not required to charge that the plaintiff was under an obligation affirmatively to establish due care on his part by reason of the second paragraph of N.J.S.A. 39:4-91, quoted above, as this would unwarrantably reverse the normal burden of proof on the issue of contributory negligence.
Insofar as concerns the precise language from the segment of Am. Jur., supra, requested to be charged by plaintiffs, *428 the first clause, "* * * the measure of duty of an operator of an emergency vehicle responding to an emergency call is due care under the circumstances," is a correct statement but its substance was adequately submitted to the jury in the present charge. The second clause is misleading as phrased and easily subject to misunderstanding if given a jury in that form. The phrase, "cannot be expected to exercise the same care," glosses over the important and familiar distinction between the standard of care required of all motorists, whether drivers of emergency vehicles or of ordinary vehicles, which is constant  i.e., reasonable care under the circumstances  and the amount of care appropriate in the particular case, within that general standard, due to special circumstances either involving unusual hazards, see Ambrose v. Cyphers, supra (29 N.J., at p. 147), or justifying certain driving maneuvers ordinarily unsafe but sometimes justified by social necessity.
Both of these types of special circumstances are implicated in the operation of an emergency vehicle on an emergency mission. To take them inversely, the exigencies of an emergency may require the operator of an emergency vehicle to take such risks as going through a red light, proceeding above fixed speed limits and driving on the wrong side of the road (but giving appropriate warnings), so that none of these maneuvers would be attended per se by the normal inference of negligent conduct. On the other hand, as well stated in City of Baltimore v. Fire Insurance Salvage Corps, 219 Md. 75, 148 A.2d 444, 448 (Ct. App. 1959), emergency vehicles taking such risks "are bound to exercise reasonable precautions [not necessarily fulfilled by the statutory sirens and flashing lights alone] against the extraordinary dangers of the situation that the proper performance of their duties compels them to create." See also Johnson v. Brown, 75 Nev. 437, 345 P.2d 754, 756 (Sup. Ct. 1959) and cases cited therein to the same effect.
Both of the foregoing considerations are necessarily subsumed under the general rule of law relative to duty *429 of care deemed applicable to the conduct of the driver of an emergency vehicle by the great majority of American decisions under a variety of special statutes  that the standard of care applicable is that the operator of such a vehicle must exercise such reasonable care to prevent injury or damage to themselves or others as is commensurate with the attendant circumstances. Annotation 82 A.L.R.2d 312 (1962), passim; 7 Am. Jur.2d, Automobiles and Highway Traffic, supra. In Varlaro v. Schultz, supra, we in effect approved that formulation of the rule and held it was consistent with our own statute. 82 N.J. Super., at pp. 149-50. This substantially comported with the charge given in the present case. As a standard of duty it is basically the same as that applicable to motorists generally.
It might well have been helpful to this jury if the trial court had mentioned the special considerations discussed above which might properly have been taken into consideration in appraising the amount of care exercised by the plaintiff driver measured as against the legal standard of care applicable, but the request to charge tendered the court by plaintiffs to that end was seriously deficient for reasons we have stated. If a more complete charge inclusive of the special considerations aforementioned can be considered to have here been necessary, notwithstanding the inadequacy of plaintiffs' request, rather than merely appropriate, we find no prejudicial error in its absence. See Jurman v. Samuel Braen, Inc., 47 N.J. 586, 592, 598 (1966). (Plain error is not asserted.) We are satisfied that this jury did not fail to find for plaintiff Kwiatek because of any misapprehension on its part that it was prima facie negligence for him to have essayed the passage through the intersection against a red light, or at the speed he was then traveling, or because he had theretofore been on the wrong side of the road, but rather, in all likelihood, because it concluded that he failed just before entering the intersection to exercise the appropriate degree of care, even in the emergent circumstances then obtaining, in maintaining *430 observation for vehicles entering the intersection from his left on a green light.
In view of all of the foregoing we find no merit in plaintiffs' subordinate and complementary contention, mentioned above, that there was error in the court's instruction that "we apply the same definition" for contributory negligence "that I gave you as to the defendant's primary negligence." Taking what follows in that portion of the charge, as quoted above, in the context of the charge as a whole, including the reading of the statute, the jury was not misled to plaintiffs' prejudice in properly applying the law to the facts.

II
Plaintiffs complain that certain comments of defendant's attorney in opening to the jury were improperly argumentative and departed from the principles stated in Passaic Valley Sewerage Commissioners v. George M. Brewster & Son, Inc., 32 N.J. 595, 605 (1960). We are inclined to agree with plaintiffs on this point in principle but are satisfied that prejudicial effect was not exerted thereby.
Judgment affirmed.