109 N.J. Super. 392 (1970)
263 A.2d 481
MORRIS APRIL, MAX APRIL, EDWIN APRIL, LEON APRIL, d/b/a MORRIS APRIL BROTHERS, PLAINTIFFS-RESPONDENTS,
v.
COLLINGS LAKES AMBULANCE ASSOCIATION AND CLAIRE S. HALLIWELL, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS-APPELLANTS,
v.
MORGAN R. PIERCE, DEFENDANT TO COUNTERCLAIMANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 9, 1970.
Decided March 30, 1970.
*394 Before Judges KILKENNY, LABRECQUE and LEONARD.
Mr. Robert N. McAllister, Jr., argued the cause for defendants-appellants (Messrs. Miller, Brone, Valore & McAllister, attorneys).
Mr. David L. Horuvitz argued the cause for plaintiffs-respondents (Mr. Horuvitz and Mr. Philip L. Lipman, attorneys).
PER CURIAM.
Defendants Collings Lakes Ambulance Association and Claire S. Halliwell appeal from a judgment in *395 favor of plaintiffs April, d/b/a Morris April Brothers (April) following a jury trial, and from the denial of their motion for a new trial or for judgment n.o.v.
Plaintiffs sued for property damage to their tractor and trailer and other consequential damage resulting from a collision which occurred at the intersection of State Highway Route 54 and Jackson Road in Buena Vista Township, Atlantic County. On July 25, 1966, as the tractor-trailer was being driven north on Route 54 by April's employee, Morgan R. Pierce, it collided with an ambulance owned by Collings Lakes Ambulance Association and driven by Claire S. Halliwell. Jackson Road, on which the ambulance had been proceeding easterly, was a stop street. The ambulance had stopped and then started up, and was approximately three-quarters of the way across the intersection when it was struck on the rear part of the right side.
Route 54 was a two-lane concrete highway, each lane being nine feet wide. It had ten-foot shoulders of oil and stone composition. A white line marked the division between the concrete traveled portion and the shoulders. Jackson Road was approximately 30 feet wide and crossed at approximately a right angle. There were no traffic control devices except the stop signs on Jackson Road. The day was clear and the road dry.
At the time of the accident a third car, a Hillman station wagon which had been proceeding two cars ahead of the tractor-trailer, had stopped with its left-turn signal on preparatory to turning left (west) into Jackson Road. At that time the ambulance was stopped on Jackson Road, its red light flashing and siren operating. Mrs. Halliwell then started across and the collision occurred as the tractor-trailer pulled past the stopped station wagon on its right.
Pierce testified that just as he proceeded to go around the station wagon, the ambulance suddenly "shot across" in front of him, leaving him no alternative but to strike it. He had previously "spotted" the ambulance parked at the *396 stop sign with its red light flashing, but he did not hear a siren blowing. The driver of the ambulance testified that after stopping she made observations and saw no vehicle to her right except the stopped station wagon. She then proceeded to cross and did not observe the tractor-trailer until almost the instant she was struck.
Defendants argue that it was error to deny their motion for dismissal and for judgment in their favor; that the verdict was contrary to the weight of the evidence, and that there was error in the charge.
Our review of the record convinces us that, in the context of the proofs, the issues of negligence, contributory negligence and proximate cause were for the jury rather than the court. Fox v. Great Atlantic & Pacific Tea Co., 84 N.J. Law 726, 728 (E. & A. 1913); Pollack v. N.J. Bell Telephone Co., 116 N.J. Law 28 (Sup. Ct. 1935). It follows that the motions to dismiss and for judgment in favor of defendants were properly denied.
In support of their contention that the verdict was contrary to the weight of the evidence and should have been set aside defendants, in effect, argue that they were guilty of no negligence since the ambulance was being operated on official business with its siren and flasher operating, and hence was entitled to the right-of-way. N.J.S.A. 39:4-91. Not so. As was said in Finderne Engine Co. v. Morgan Trucking Co., 98 N.J. Super. 421 (App. Div. 1968):
[T]he exigencies of an emergency may require the operator of an emergency vehicle to take such risks as going through a red light, proceeding above fixed speed limits and driving on the wrong side of the road (but giving appropriate warnings), so that none of these maneuvers would be attended per se by the normal inference of negligent conduct. On the other hand, as well stated in City of Baltimore v. Fire Insurance Salvage Corps., 219 Md. 75, 148 A.2d 444, 448 (Ct. App. 1959), emergency vehicles taking such risks "are bound to exercise reasonable precautions [not necessarily fulfilled by the statutory sirens and flashing lights alone] against the extraordinary dangers of the situation that the proper performance of their duties compels them to create." [at 428] *397 See also Annotation, 84 A.L.R.2d 121, 135, 142 (1962). Here the evidence was such as reasonably to support the finding, implicit in the jury's verdict, that the operator of the ambulance was negligent in proceeding from a stopped position onto a busy state highway in the face of the approach of the truck. Accordingly, we may not disturb the trial judge's denial of defendants' motion for a new trial on that ground. Kulbacki v. Sobchinsky, 38 N.J. 435, 444-447, 452 (1962); Dolson v. Anastasia, 55 N.J. 2, 7-9 (1969).
We next proceed to consideration of defendants' contention that the trial court erred in its denial of their request to charge the applicable provisions of N.J.S.A. 39:4-85. That statute provides:
The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass at a safe distance to the left thereof and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle. If vehicles on the roadway are moving in two or more substantially continuous lines, the provisions of this paragraph and section 39:4-87 of this Title shall not be considered as prohibiting the vehicles in one line overtaking and passing the vehicles in another line either upon the right or left, nor shall those provisions be construed to prohibit drivers overtaking and passing upon the right another vehicle which is making or about to make a left turn.
The driver of an overtaking motor vehicle not within a business or residence district shall give audible warning with his horn or other warning device before passing or attempting to pass a vehicle proceeding in the same direction.
The driver of a vehicle may overtake and pass another vehicle upon the right as provided in this section only under conditions permitting such movement in safety. In no event shall such movement be made by driving off the pavement or main-traveled portion of the roadway. [Emphasis added.]
The accident did not occur in a business or residence district.
The request was refused upon the asserted ground that the facts in this case did not involve an attempt to pass a vehicle proceeding in the same direction. Later, on the motion for a new trial, the trial judge noted that he had *398 declined to charge the last paragraph on N.J.S.A. 39:4-85 because
I do not feel that this section, read as a whole, applies to the facts in this case. As I recall * * * the testimony was to the effect that the shoulder was hard-surfaced at this intersection; and the testimony was further to the effect that part of the truck was in the * * * main traveled portion of the highway and part on the shoulder. I think that the salient fact, gentlemen, was that when the driver attempted to avoid this accident he pulled way over to where he went in order to try to get away from the oncoming ambulance.
Plaintiffs urge that the court below was correct in ruling that the portion of N.J.S.A. 39:4-85 requiring an audible warning before attempting to pass a vehicle proceeding in the same direction was not intended to apply where, as here, the motorist being overtaken is stopped preparatory to making a left turn. No authority for this contention is cited, and we know of none. The words of the statute are clear. We may not assume that by it the Legislature intended to afford less protection to a motorist stopped preparatory to making a left-hand turn who is being passed on the right than to one in motion being passed on the left. Actually, it would appear that the danger in the former situation exceeds that in the latter. In addition, passing a vehicle on the right at an intersection frequently, as here, involves the movement of other vehicles. We hold that a vehicle temporarily stopped on the highway does not lose its character as "a vehicle proceeding in the same direction" merely by the fact that it is not in motion. Butane Corporation v. Kirby, 66 Ariz. 272, 187 P.2d 325 (Sup. Ct. 1947); Hutchinson v. Kinzley, 66 N.D. 25, 262 N.W. 251 (Sup. Ct. 1935); Weaks v. South Carolina State Highway Dept., 250 S.C. 535, 159 S.E. 2d 234 (Sup. Ct. 1968).
The statute prohibits driving off the pavement or main traveled portion of the roadway. To the extent here pertinent, "roadway" is "that portion of a highway, improved, designed, or ordinarily used for vehicular travel, exclusive *399 of the berm or shoulder." N.J.S.A. 39:1-1. The shoulder is defined as "that portion of the highway, exclusive of and bordering the roadway, designed for emergency use but not ordinarily to be used for vehicular travel." Ibid. The berm is defined as "that portion of the highway exclusive of roadway and shoulder, bordering the shoulder but not to be used for vehicular traffic." Ibid. The Legislature did not intend that the shoulder of the road be used for ordinary travel. Sharp v. Cresson, 63 N.J. Super. 215, 220 (App. Div. 1960); Hochberger v. G.R. Wood, 124 N.J. Law 518 (E. & A. 1940). Here, as noted, there was a line of demarcation separating the shoulders from the main traveled portion of the highway.
The fact that the shoulder was hard-surfaced afforded no ground for the refusal to charge the request. The last paragraph of N.J.S.A. 39:4-85 was enacted in its present form by L. 1951, c. 23. Prior thereto the last sentence had provided that: "No person shall operate a motor vehicle on the dirt, gravel or stone shoulder adjacent to the improved, paved portion of a highway when overtaking and passing a vehicle upon the right." By the amendment of 1951 driving off the pavement onto the shoulder was prohibited regardless of the kind of shoulder.
Whether, as the court felt, Pierce drove off the pavement "in order to try to get away from the oncoming ambulance" was, at most, an issue of fact which could afford no justification for the refusal to charge the request. Additionally, our examination of the record reveals no factual basis for a finding to that effect. The testimony placed the stopped station wagon to the right of the center line which divided the two nine-foot concrete lanes constituting the main traveled portion of the highway so that, of necessity, the tractor-trailer had to be driven onto the shoulder in order to pass it. Further, the truck driver himself testified:
I let up off the fuel and proceeded to the right of the vehicle to go around when I spotted the ambulance parked at the stop sign. Just as *400 I proceeded to go around the vehicle, the parked vehicle, the ambulance suddenly shot across, and I had no chance or no alternative except to hit it. [Emphasis added]
And further:
Q Now, to go around the parked car how did you make that movement, can you explain that to us? A I pulled partially on the shoulder.
And
Q Well, explain, Mr. Pierce, what you mean by partially on the shoulder. A My left wheels on the whole rig was still on the highway, half on the highway.
Q And your right wheels were on the shoulder, sir. Is that what you mean? A Yes, sir.
Q And you did this in order to pass this white car with the turn signals on. Is that correct? A Yes, sir. [Emphasis added]
And in summation his counsel described what happened as:
[H]e doesn't have to stop and wait, otherwise you would jam traffic  and he has a right to pass on the side. He saw the ambulance but the ambulance was standing still and he had a right to assume that the ambulance would stand still. He pulled to the right and suddenly this lady shot out.
In the context of the issues presented and the facts bearing thereon we are satisfied that the request should have been charged. The statute contains an exception to the general rule that an overtaking vehicle shall pass to the left of the vehicle being overtaken. The Legislature in its wisdom has prescribed the conditions under which a motorist may pass to the right of a vehicle which is about to make a left-hand turn. Thus a driver intending such a movement may do so "only under conditions permitting such movement in safety" and "in no event" may he do so "by driving off the pavement or main traveled portion of the highway." Since plaintiffs' driver, in operating his loaded tractor-trailer through the intersection, had elected *401 not to stop but to pass the stopped station wagon on the right, defendants were entitled to have the jury instructed as to the standard of conduct set up by the Legislature for drivers engaging in such a maneuver. The jury was entitled to consider any violation of the statutory standard, together with all other evidence in the case, as bearing on the issue of Pierce's asserted contributory negligence. Phillips v. Scrimente, 66 N.J. Super. 157, 162-164 (App. Div. 1961). It was as relevant and applicable as were the statutes referable to stop streets, N.J.S.A. 39:4-144, and emergency vehicles, N.J.S.A. 39:4-91, which the court did charge.
Plaintiffs urge that defendants suffered no prejudice since, upon consideration of the charge as a whole, the jury was adequately instructed as to the law applicable, citing Stackenwalt v. Washburn, 42 N.J. 15 (1964), and Ellis v. Caprice, 96 N.J. Super. 539 (App. Div. 1967), certif. den. 50 N.J. 409 (1967). Not so. The portion of the charge directed to the issue of contributory negligence, while it correctly defined contributory negligence in the abstract, failed to relate that definition to the manner in which the tractor trailer was being driven as it came up to the intersection. Although the jury was correctly instructed that the Legislature had set up the stop street act, N.J.S.A. 39:4-144, as a standard of conduct to be applied to the driver of the ambulance, it was left in the dark as to the legislatively prescribed standards applicable to the conduct of the driver of the tractor trailer. The need for such a charge is emphasized by the assurance given the jury by plaintiffs' counsel in summation that "he [Pierce] doesn't have to stop and wait, otherwise you would jam traffic  and he has the right to pass on the [right] side." (Emphasis added.)
That defendants were prejudiced by the omission to so charge can hardly be denied. It bore upon a sensitive and decisive issue in the case. The driver of the ambulance conceded that she had failed to detect the approach of the tractor trailer until almost the moment of impact. Had the *402 driver of the latter sounded his horn before attempting to pass the station wagon the jury could have found that she would have heard it before starting up and would have remained standing until the danger had passed. Pierce testified that he first observed the stopped station wagon when he was 250 feet behind it; that he was then going 45 to 50 miles an hour, and that he had air brakes and had plenty of time to stop before reaching the station wagon. The jury could well have determined that had he followed the mandate of the statute and remained on the traveled portion of the highway, controlling or stopping his rig until the way ahead was clear, there would have been no accident.
We are convinced that the omission to charge as requested amounted to a manifest denial of justice which mandates a reversal.
The judgment of the Law Division is accordingly reversed and the case remanded for a new trial as to all issues.