644 A.2d 666

ROBIN FIELDER, PLAINTIFF–RESPONDENT, v. FREDERICK S. JENKINS, TOWNSHIP OF NEPTUNE POLICE DEPARTMENT AND TOWNSHIP OF NEPTUNE, DEFENDANTS–APPELLANTS, AND NOELLE E. STONACK, KEVIN MCGHEE AND BENNIE T. MCGHEE, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued May 3, 1994—Decided June 30, 1994.

Before Judges PRESSLER, DREIER and KLEINER.

*Martin J. McGreevy* argued the cause for appellants (*Carton, Witt, Arvanitis & Bariscillo,* attorneys; *Mr. McGreevy,* of counsel; *James D. Carton, IV* and *Aaron J. Rosenfeld,* on the brief).

*William B. Gallagher, Jr.* argued the cause for respondent Robin Fielder (*Klitzman & Gallagher,* attorneys; *Austin M. Kenny,* on the letter brief).

*Michael F. Carnevale, II* argued the cause for respondent Noelle E. Stonack.

*Lombardi and Lombardi,* attorneys for respondent Kevin McGhee, did not submit a brief.

The opinion of the court was delivered by

PRESSLER, P.J.A.D.

■ This appeal on leave granted requires us once again to address the tort liability of police officers who, while engaged in the vehicular pursuit of violators or suspected violators of the law, disregard the rules of the road, become involved in motor vehicle accidents, and inflict injury and loss upon innocent members of the driving public. In our first consideration of this case, *Fielder v. Jenkins,* 263 *N.J.Super.* 231, 622 *A.*2d 906 (App.Div.1993) (*Fielder I* ), we distinguished, for immunity purposes, between an accident directly involving the pursued person and an accident directly involving the pursuing officer, and we concluded that the immuni-

ties afforded by *N.J.S.A.* 59:5–2b and *N.J.S.A.* 59:3–3 do not apply when it is the pursuing police officer rather than the pursued violator whose vehicle is involved in the accident. *Dictum* in the subsequent opinion of the Supreme Court in *Tice v. Cramer*, 133 *N.J.* 347, 627 *A.*2d 1090 (1993), raised questions about the correctness of that holding, and we have reconsidered it in the light of *Tice.* We continue, however, to adhere to our original view.

The present factual and procedural posture of the matter now before us is simple. In *Fielder I*, we summarized the facts then before us as follows:

> Plaintiff Robin Fielder was a passenger in an automobile operated by defendant Noelle E. Stonack, which was proceeding south on Route 35 in Neptune Township. As the car approached the intersection of Routes 35 and 33, the light was green, and Stonack proceeded. Her vehicle was struck in the intersection by a patrol car of defendant Neptune Township being driven by defendant, Officer Frederick S. Jenkins. Jenkins, who had entered the intersection at a high rate of speed and against the light, was engaged in official duties. It appears that some short time earlier, defendant Kevin McGhee, driving a motorcycle owned by defendant Bennie T. McGhee, had been stopped for speeding in the neighboring town of Tinton Falls, and instead of submitting to the arrest, he rode off at high speed. The Tinton Falls officer pursued, requesting assistance from Neptune. Two other Neptune patrol cars responded before Jenkins did. Jenkins's was consequently the fourth police car in the chase when this accident occurred. [263 *N.J.Super.* at 233–234, 622 *A.*2d 906.]

Based on these facts, Neptune Township and Jenkins moved for summary judgment dismissing plaintiff's ensuing complaint against them. They argued that they were immunized from liability to plaintiff for her ensuing injuries by *N.J.S.A.* 59:5–2b and *N.J.S.A.* 59:3–3. The trial judge agreed. We reversed, holding that those statutory immunities do not apply when it is the police officer rather than the pursued person who collides with the vehicle of an innocent motorist during the high-speed chase. We hence concluded that the usual rule of negligence defining the standard of care for drivers of emergency vehicles in emergency situations obtained. Accordingly, we remanded to the trial court for further proceedings. When the Supreme Court issued its opinion in *Tice*, Neptune and Jenkins renewed their motion for summary judgment, claiming that the principles there articulated afforded them immunity as a matter of law. The trial judge

denied relief. We granted defendants' ensuing motion for leave to appeal, and now affirm the denial of the motion for summary judgment.

In addressing potential tort liability arising out of injuries sustained by innocent victims during the course of police pursuit of escapees, we drew, in *Fielder I,* what we regarded to be a critical distinction between accidents in which the police vehicle was involved and accidents in which only the vehicle of the pursued person was involved. The validity of that distinction was questioned by *Tice,* which involved an accident between the innocent victim and the pursued person, as follows:

> The denial of immunity in *Fielder* was based on the fact that the officer's car, rather than the car of the pursued party, struck the plaintiff's car. The distinction justified by the Appellate Division on the basis of the statutory language seems unrelated to the need for police immunity, a distinction based on a circumstance dependent wholly on chance—the chance that the innocent vehicle will get to the intersection when the pursuing police car is crossing it rather than when the suspect's car is. We express no view, however, on that issue of statutory construction.

Having reconsidered the distinction we relied on in *Fielder I* in the light of the Court's *dictum* in *Tice,* we remain convinced that as a matter of statutory construction and public policy, that distinction remains sound.

We start with the proposition that but for the specific immunities accorded by the Tort Claims Act, *N.J.S.A.* 59:1-1, *et seq.,* there would be no question that a police officer, even while engaged in his official duties and even if those duties involve the need to respond to an emergency, is required to drive his motor vehicle with due regard to the safety of the public and that he will be actionably negligent if he fails to comply with a standard of care commensurate with the circumstances of the emergency to which he is responding. That is the express mandate of *N.J.S.A.* 39:4-91, which accords the right of way to emergency vehicles, including, specifically, emergency vehicles "in the pursuit of an actual or suspected violator of the law ..." but nevertheless also imposes upon the drivers of such vehicles "the duty to drive with due regard for the safety of all persons ..." and responsibility for

"the consequences of ... [their] reckless disregard for the safety of others."

Construing *N.J.S.A.* 39:4–91 in the light of common-law liability principles, Judge Goldmann, writing for this court in *Varlaro v. Schultz,* 82 *N.J.Super.* 142, 150, 197 *A.*2d 16 (App.Div.1964), explained that while the operator of an emergency vehicle responding to an emergency cannot be expected to exercise the same degree of care as an ordinary motorist, he is nevertheless obliged to exercise such due care as is commensurate with the totality of the circumstances. This circumstantial test of due care is, moreover, basic in the law of negligence in which "conduct is customarily tested contextually—in terms of how a reasonable man would act under like circumstances." The principles enunciated in *Varlaro,* in which police conduct was in issue, have been followed in respect of other emergency vehicles, including ambulances and fire engines. *See, e.g., Rekiec v. Zuzio,* 132 *N.J.Super.* 71, 332 *A.*2d 222 (App.Div.1975); *April v. Collings Lakes Ambulance Ass'n,* 109 *N.J.Super.* 392, 263 *A.*2d 481 (App.Div.1970); *Finderne Engine Co. v. Morgan Trucking Co.,* 98 *N.J.Super.* 421, 237 *A.*2d 624 (App.Div.1968). Indeed these principles are so clearly understood that they have been incorporated in the emergency-vehicle section of the Model Civil Jury Charges on automobile negligence. See § 5.20L., reading in full as follows:

On the other hand, drivers of emergency vehicles must also exercise reasonable care under the circumstances in the operation of an emergency vehicle. The degree of care required of the driver of such vehicle is that he/she must exercise reasonable care to prevent injury or damage to himself/herself or others in light of the emergency circumstances.

The statute in question, *N.J.S.A.* 39:4-91 which I have previously referred to further states that:

This section shall not relieve the driver of any authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall it protect the driver from the consequences of his/her reckless disregard for the safety of others.

In considering the standard of care required under this statute of the driver of an emergency vehicle, keep in mind that by necessity, the driver of an emergency vehicle, responding to an emergency situation, may be required to take risks which would constitute negligent conduct if performed by a motorist under ordinary conditions. The driver may be required to go through a red light or stop sign or

other traffic control device; proceed at a speed above the fixed limits, or drive on the wrong side of the road. As such, the driver of an emergency vehicle, on an emergency call, cannot be expected to exercise the same care that the law requires of the ordinary motorist, who has no emergency duty to perform.

Accordingly, the driver of an emergency vehicle, taking such risks, is bound to take reasonable precaution to protect others from the extraordinary dangers of the situation that proper performance of his/her duties compels him/her to create. Furthermore, the statute I have read to you requires that the driver of an emergency vehicle must not drive with reckless disregard for the safety of others. That is, he/she must anticipate the dangers his/her operation of the vehicle involves and exercise reasonable care for the safety of others under the circumstances.

Violation of the standard of care as set forth by the statute is evidence to be considered by you in determining whether the emergency vehicle driver's conduct was negligent.

Three years after *Varlaro* had enunciated the circumstantial test for determining liability arising out of an officer's operation of his vehicle in emergency circumstances, this court was faced with the question of whether an officer could be held vicariously liable for the injury inflicted by the negligent conduct of the pursued driver who, while attempting to elude the pursuing police, collides with an innocent motorist. Following the majority of jurisdictions that had considered that question, we too, in *Roll v. Timberman*, 94 *N.J.Super.* 530, 229 *A.*2d 281 (App.Div.), *certif. denied,* 50 *N.J.* 84, 232 *A.*2d 147 (1967), declined to impose vicarious liability in that situation. We reasoned first that "it is the duty of a police officer to apprehend those whose reckless driving makes use of the highway dangerous to others ..." and second that "the proximate cause of the accident is the reckless driving of the pursued, notwithstanding recognition of the fact that the police pursuit contributed to the pursued's reckless driving." *Id.* at 536, 229 *A.*2d 281. We think it plain, however, that nothing in *Roll* was intended in any way to abrogate, vitiate or diminish the holding in *Varlaro.* Nor, of course, is there anything inconsistent between *Varlaro* and *Roll,* since, when the officer is driving the vehicle that collides with the innocent victim, the officer's conduct is or may be the proximate cause of the accident. Moreover the officer, even while performing his duty, is required to so do in accordance with a standard of care appropriate to the nature of the duty being performed.

The question then is whether the Tort Claims Act alters what was already a recognized distinction in our jurisprudence, namely the potential liability of a police officer for the injury resulting from his own negligent driving and the presumed non-liability of a police officer for the injury resulting from the negligent driving of a person eluding police pursuit. We regard it as beyond question that *N.J.S.A.* 59:5–2b, entirely consistently with *Roll*, immunizes the police officer from liability for the conduct of the pursued person. That, of course, is the holding of *Tice*. But we are unable to conclude that *N.J.S.A.* 59:5–2b also immunizes the officer from the consequences of his own negligent driving.

As we pointed out in *Fielder I*, the text of *N.J.S.A.* 59:5–2b is cast exclusively in terms of the conduct of the person who is the object of police attention. Thus, it provides for public entity and public employee immunity for an injury caused *by* an escaping or escaped prisoner, an escaping or escaped person, a person resisting arrest, or a prisoner to any other prisoner. The statute does not purport to address at all the conduct of the police officer. Since we are therefore satisfied that the verbiage of *N.J.S.A.* 59:5–2 does not encompass the actions of the police officer himself, we cannot but conclude that *N.J.S.A.* 39:4–91 and the consistent common law remain fully applicable.

We are also persuaded that continued viability of *N.J.S.A.* 39:4–91 and the *Varlaro* line of cases best serves the public interest and best accommodates the purpose and policy of the two statutes. We note first that a basic tenet of our present system of socially responsible jurisprudence is, by insurance coverage, to spread the risk of compensating individual victims of negligence. This State is obviously profoundly committed to this tenet in respect of automobile negligence. Protection of innocent victims of highway mayhem is precisely what our complex compulsory automobile insurance requirements are all about. We see no basis, statutory or otherwise, for depriving that protection to innocent motorists injured by a police vehicle being negligently or recklessly driven by a police officer during a high-speed pursuit. Every local

government unit's vehicles and equipment, including, of course, its police vehicles, are expressly required by *N.J.S.A.* 40A:10–3 to be covered by liability insurance in a minimum amount of $50,000/ $100,000. This is a significantly greater minimum than the $15, 000/$30,000 prescribed by *N.J.S.A.* 39:6A–3 for passenger vehicles and by *N.J.S.A.* 39:6B–1 for commercial vehicles. We think it plain that the legislative intent in imposing this municipal insurance requirement was to spread as comprehensive a protective net as possible over the motorists using the public highways of this State by encompassing every vehicle using the roadways within the compulsory insurance scheme. We understand that availability of insurance coverage does not equate with actionable negligence. Nevertheless, in our view the long history of legislative solicitude for the innocent motorist is inconsistent with a legislative intention to have conferred immunity upon any motorist from the consequences of his own negligent driving.[1]

We are also satisfied that public protection requires the imposition upon police officers of a duty of care commensurate with the circumstances when they get behind the wheel of their vehicles.

---

[1] Because of compulsory insurance, there is no reason to presume that the vehicle being driven by the pursued person is not insured even though that may be from time to time the case. Whether the pursuing officer is liable for the conduct of the pursued person or not, obviously the pursued person is liable for his own conduct. Thus, if the innocent motorist is injured by a collision with the pursued person, he will have recourse to the insurance covering that vehicle. If there is none, the injured person may have recourse to the Unsatisfied Claim and Judgment Fund or to the uninsured or underinsured vehicle motor coverages of his own policy. He is not left remediless. If, however, the innocent victim is not injured by collision with the pursued person but rather by collision with the pursuing officer, the availability of the victim's recourse may be dramatically curtailed if the officer is immune from liability and is therefore not a tortfeasor. We understand that if the police car is involved in the accident, the victim may still have recourse against the pursued person as at least a joint tortfeasor, but if there is police-officer immunity, the victim will never have recourse against the vehicle which struck him. Thus, in terms of the chance circumstances noted by the Court in *Tice*, the irony is that in terms of recourse, the innocent victim, if there is police immunity, may be better off when struck by the pursued person than by the pursuing officer. We do not believe the Legislature intended such a result.

We have no doubt, for example, that if an officer were pursuing a specifically identified traffic violator driving a specifically identified vehicle, and if during that pursuit the officer, without activating his overhead lights or siren, sped through a controlled intersection against the light at a corner on which a school is located just at the time the children were being dismissed and were crossing the street en masse, a reasonable person would have no difficulty in concluding that the officer was not driving his vehicle with a standard of care commensurate with the circumstances. There is nothing we see in the Tort Claims Act immunizing the officer for the consequences of that conduct. In the end, of course, it is always a matter of degree,[2] and it is in the end and until the Legislature otherwise expressly mandates,[3] for the jury to determine whether a commensurate standard of care has been complied with.

In sum, we are aware of no situation in which a person is not charged with liability for the consequences of his own negligent driving, however negligence in the circumstances may be defined, and we do not believe the Tort Claims Act so requires when the negligent driver is a police officer. We note, in this regard, that while judicial decisions of other jurisdictions are not greatly helpful because they ordinarily construe specific and disparate state statutes, our own research has disclosed no jurisdiction in which either the officer himself or his employing public entity is not liable for injury caused by the officer if either negligent or reckless during a police pursuit. See cases collected in Joel E. Smith, Annotation, *Liability of Governmental Unit or Its Officers for Injury to Innocent Occupants of Moving Vehicle, or for*

---

[2] We note that if the pursuing officer's conduct is so egregious as to shock the conscience, it may also be actionable under *U.S.C.A.* § 1983 as a civil rights impingement. *See Fagan v. City of Vineland*, 22 *F.*3d 1296 (3d Cir.1994).

[3] We note that the proposed legislation, A–2242, adverted to in *Tice*, 133 *N.J.* at 371, 627 *A.*2d 1090, that would immunize pursuing officers who are in compliance with Attorney General pursuit guidelines or policies has not yet been enacted.

*Damage to Such Vehicle, as Result of Police Chase,* 4 *A.L.R.* 4th 865, §§ 6 and 7 (1981) and Supplemental Service. And, indeed, some jurisdictions having a statutory or common law immunity akin to *Roll* and *N.J.S.A.* 59:5–2b make just the distinction on which our own analysis is based. *See, e.g., City of Miami v. Horne,* 198 *So.*2d 10, 13 (Fla.1967) holding that "[t]he rule governing the conduct of police in pursuit of an escaping offender is that he must operate his car with due care and, in so doing, he is not responsible for the acts of the offender. Although pursuit may contribute to the reckless driving of the pursued, the officer is not obliged to allow him to escape." This rule was followed by *Madison v. Weldon,* 446 *So.*2d 21, 28 (Ala.1984). And in California, whose Tort Claims Act provides the model for ours, although an officer is not liable for the actions of the pursued person or for his own actions, nevertheless under the traffic laws, the public entity remains liable for the negligence of the officer in executing the pursuit. *Duarte v. City of San Jose,* 100 *Cal.App.*3d 648, 161 *Cal.Rptr.* 140, 144 (1980) (noting that had an officer rather than a pursued person been driving the vehicle which struck plaintiff, the municipality would have been liable).

We make this final observation as to the Tort Claims Act. There is the suggestion in *Tice,* 133 *N.J.* at 371–374, 627 *A.*2d 1090, of a potential applicability in the circumstances here of the good-faith immunity of *N.J.S.A.* 59:3–3, which insulates a public employee from liability other than for false arrest or false imprisonment "if he acts in good faith in the execution or enforcement of any law." Considering that the Comment to this section makes clear its intent to protect officers from frivolous suits and considering further what we have already said, we do not believe that this section of the Act can be reasonably applied to behind-the-wheel conduct. Good faith in engaging in the pursuit is obviously relevant to the issue of police liability for the negligent or reckless driving of the pursued person. But where the issue is due care under the circumstances as a motorist, we are persuaded that a motorist's good faith is an inapposite concept.

■   Aside from the question of the applicability of *N.J.S.A.* 59:5–2b to officer driving, there is an additional and alternative basis requiring the denial of summary judgment here.  As *Tice* made clear, the immunity of that statute does not apply to situations in which the officer is guilty of willful misconduct.  133 *N.J.* at 370, 627 *A.2d* 1090.  *See also N.J.S.A.* 59:3–14.  The pretrial discovery in this case suggests a potential basis for a finding of such misconduct here.  According to the deposition of Officer Jenkins, while he was on patrol on the night in question and within his assigned zone, he received a radio transmission from the Neptune police dispatcher sent to all Neptune units advising that a Tinton Falls police car was pursuing a motor vehicle through Neptune.  To Jenkins's knowledge there were at least four other Neptune units on the road at that time.  Jenkins was not ordered by a superior officer to join the pursuit.  In fact, his having done so was contrary to department rules, the Chief of Police having testified that absent other instructions it is only the unit in the zone in question which is to respond; all other units are to remain in their zone, unless otherwise directed.  Jenkins was not in the subject zone and should not have left his zone.  Moreover, Jenkins admitted that during the pursuit, the supervising sergeant had, by radio, ordered all officers to terminate the pursuit if its continuation represented a danger either to themselves or to other people.  Whether Jenkins's unilateral decision to have left his zone and to have continued the pursuit under the circumstances constituted actionable misconduct are questions of fact.

The order denying defendants' motion for summary judgment dismissing the complaint is affirmed and we remand for further proceedings.